[Cite as *Spillane v. Spillane*, 2020-Ohio-5052.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


| | | |
|---|---|---|
| MICHELLE T. SPILLANE, | : | CASE NO. CA2019-12-206 |
| Appellee, | : | O P I N I O N<br>10/26/2020 |
| | : | |
| - vs - | : | |
| | : | |
| DONALD J. SPILLANE, | : | |
| Appellant. | : | |


APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. DR2018-12-1022


Gena R. Larison, 220 South Monument Avenue, Hamilton, Ohio 45011, for appellee

Cook Howard Law, Ltd., Melynda Cook Howard, 1501 First Avenue, Middletown, Ohio 45044, for appellant


**M. POWELL, P.J.**

{¶ 1} Appellant, Donald Spillane ("Husband"), appeals a decision of the Butler County Court of Common Pleas, Domestic Relations Division, awarding spousal support to appellee, Michelle Spillane ("Wife").

{¶ 2} The parties were married in May 1999 and have one daughter born issue of the marriage in 2000. At the time of the parties' marriage, Wife had four children from a

previous relationship; Husband had two children from a previous relationship, one of which was already emancipated. Following the marriage, Wife cared for the children and was not employed outside the home until 2007.

{¶ 3} In 2007, Wife became a part-time office manager at her current employer, the Regis Investment Company ("Regis"). Wife has never held full-time employment and Regis does not have a full-time position available to offer her. Wife is 58 years old, working 25-27 hours a week and earning $18.75 an hour. Each year, she receives a pay raise between 50 cents and $1 an hour. Husband has always worked in finance and previously held a CFO position. In 2017, he became Vice-President of Finance at the Hollaender Manufacturing Company ("Hollaender"). Husband is 61 years old, earning a base income of $2,600 per week. He received a $5,875 bonus in 2018 and a $8,125 bonus in 2019.

{¶ 4} During the marriage, the parties lived a comfortable lifestyle, sending the children to private school, regularly going out, attending sporting events, and taking an annual vacation. At the time of the divorce, the parties owned the marital home, four rental properties, a vacation home and a tract of land in Tennessee, three vehicles, and a boat. The vehicles and boat were all paid off. Wife did not have any retirement assets; Husband had significant premarital and marital retirement assets.

{¶ 5} Wife filed a complaint for divorce in December 2018. At the time of Wife's filing, the parties' daughter was emancipated. Pursuant to a separation agreement, the parties settled all issues with the exception of spousal support. Wife received one of the rental properties to use as her residence and one vehicle; Husband kept the marital home as his residence and received three rental properties, the vacation home, two vehicles, and the boat. Wife received $127,741 for her share of the marital portion of Husband's retirement accounts and an additional $15,000 for her share of the marital equity in the vacation home. The parties were ordered to sell the Tennessee tract of land. On June 25,

2019, the trial court held a hearing regarding spousal support. Both parties testified on their own behalf.

{¶ 6} By decision filed on October 17, 2019, the trial court found that awarding spousal support to Wife was appropriate in light of the disparity between the parties' current incomes and earning ability, their 20-year marriage, the parties' standard of living during the marriage, the disparity in their respective retirement savings, Wife's "absence from the workforce due to family responsibilities, and her need to obtain additional training or education in order to better herself and accrue savings for the future." The trial court awarded Wife spousal support as follows: $3,100 per month, effective August 1, 2019, until August 1, 2022, and thereafter, $2,700 per month until August 1, 2027, Wife's remarriage, or Wife's "cohabitation in a domestic relationship."

{¶ 7} On November 21, 2019, the trial court issued a final divorce decree, awarding Wife spousal support and ordering that it be paid through the Butler County Child Support Enforcement Agency ("CSEA") and subject to a two percent processing fee. The trial court retained jurisdiction over the amount of spousal support.

{¶ 8} Husband appeals, raising three assignments of error.

{¶ 9} Assignment of Error No. 1:

{¶ 10} THE COURT ERRED IN ORDERING AN EIGHT YEAR SPOUSAL SUPPORT OBLIGATION EQUA[L]ING PAYMENTS OF $273,600.

{¶ 11} Husband argues the trial court erred in its spousal support determination.

{¶ 12} A trial court has broad discretion in determining whether to award spousal support, as well as the amount and duration of such award, based on the facts and circumstances of each case. *Curry v. Curry*, 12th Dist. Butler No. CA2016-07-136, 2017-Ohio-8127, ¶ 15. Absent an abuse of discretion, a spousal support award will not be disturbed on appeal. *Id.*

{¶ 13} A trial court has a statutory duty to base a spousal support order on a careful and full balancing of the factors in R.C. 3105.18(C)(1). *Id.* at ¶ 16. Pursuant to that statute, the court is required to consider factors such as income of the parties, earning abilities of the parties, education of the parties, retirement benefits of the parties, assets and liabilities of the parties, ages, duration of the marriage, the parties' standard of living during the marriage, and "the time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought."

{¶ 14} As pertinent here, the trial court made the following findings: (1) Wife earns a gross annual income of $26,325 and Husband earns a base annual income of $135,200; (2) averaging the bonuses Husband received the prior two years, he can reasonably be expected to receive $7,000 in annual bonuses; (3) Wife has no retirement benefits other than the marital portion she will receive from Husband; by contrast, Husband has significant premarital retirement assets and currently deposits ten percent of his gross base income into his retirement account which is matched by his employer in the amount of $5,408 annually and which is not reported as additional income; (4) the parties were married for 20 years; (5) Wife "hopes to further her education by obtaining an Associate's Degree in Business, with an emphasis in accounting. She testified that she is unlikely to obtain gainful full time employment without at least further training in certain databases;" and (6) the trial court conducted a FinPlan analysis "which considers the income and monthly expenses of the parties, but does not consider the tax consequences of an exchange of spousal support, pursuant to the current Tax Code." The trial court further found, "The Court anticipates that [Wife] will utilize the additional spousal support over the next three years to obtain further training and/or education in order to find higher paying employment."

**Failure to Impute Additional Income to Wife**

{¶ 15} Husband argues the trial court erred in not finding that Wife was voluntarily underemployed and consequently in not imputing additional income to Wife for purposes of spousal support. Husband's argument focuses on Wife's earning ability, one of the factors the trial court must consider. *See* R.C. 3105.18(C)(1)(b).

{¶ 16} The earning ability of a party involves "'both the amount of money one is capable of earning by his or her qualifications, as well as his or her ability to obtain such employment.'" *Schenck v. Schenck*, 12th Dist. Butler No. CA2012-08-150, 2013-Ohio-991, ¶ 17, quoting *Carroll v. Carroll*, 5th Dist. Delaware No. 2004-CAF-05035, 2004-Ohio-6710, ¶ 22. When considering the relative earning abilities of the parties in connection with an award of spousal support, courts need not restrict their inquiry to the amount of money actually earned, but may also hold a person accountable for the amount of money the person could have earned if he or she had made the effort. *Schenck* at ¶ 17.

{¶ 17} Unlike the child support statute, R.C. 3105.18 does not direct a trial court to impute income to a spouse who is voluntarily unemployed or underemployed. Nevertheless, R.C. 3105.18(C)(1)(b), by directing a court to consider the "earning abilities" of the parties as opposed to their actual earnings in considering an award of spousal support, permits a court to do so. This court and other courts have approved a trial court's imputation of income for purposes of determining spousal support. *Justice v. Justice*, 12th Dist. Warren No. CA2006-11-134, 2007-Ohio-5186, ¶ 43. Thus, in fashioning a spousal support award, a trial court "may impute income to a party who is voluntarily unemployed, voluntarily underemployed, or otherwise not working up to his or her full earning potential." *Moore v. Moore*, 12th Dist. Clermont No. CA2006-09-066, 2007-Ohio-4355, ¶ 66. Of course, a court may compare the parties' earning abilities without imputing any income. *See Collins v. Collins*, 9th Dist. Wayne No. 10CA0004, 2011-Ohio-2087. "Clearly, if one

spouse has substantial earning ability and the other does not, then this disparity will be a factor to be considered along with the other statutory factors when arriving at reasonable spousal support."  *Id.* at ¶ 19.

{¶ 18} As with other spousal support determinations, findings of whether a party is voluntarily underemployed, and the amount of income that should be imputed, if any, are factual determinations to be made by the trial court based on the circumstances of each particular case.  *Schenck*, 2013-Ohio-991 at ¶ 17; *Rock v. Cabral*, 67 Ohio St.3d 108, 112 (1993).  Absent an abuse of discretion, the trial court's determination on these issues will not be disturbed on appeal.  *Id.*

{¶ 19} Husband argues that the trial court should have imputed a $58,000 full-time income to Wife based upon a job he believed Wife could perform and that Wife chose not to take because she was concentrating on the divorce.

{¶ 20} During the spousal support hearing, both parties separately referred to a $58,000 job.  Wife testified that sometime before June 1, 2019, a friend mentioned that a couple needed someone to take care of their children for 40 hours a week for a salary of approximately $58,000.  Wife testified she never talked to the couple or further investigated because the couple had an immediate need and Wife was unable to provide 40 hours a week as she was working part time and was concentrated on the divorce, renovating the rental property that was to become her residence, and ultimately moving into that property. Wife testified that the offer was "just really a fluke," "a thought that was presented to [her]." Husband, in turn, testified that based upon a page of the bi-annual manual of an employer resources association used by Hollaender, his employer, and the fact Hollaender had recently hired an accounts payable employee, Wife was capable of earning a $58,000 a year as "she met most of the qualifications" found on the page of the manual.  Husband admitted that while Wife knew he was hiring for the accounts payable position, he did not

offer her the position and did not want her to apply. The page of the manual was excluded as hearsay by the trial court. We find no abuse of discretion in the trial court's refusal to impute a $58,000 full-time income to Wife based upon the foregoing evidence.

{¶ 21} Husband further argues the trial court abused its discretion in awarding Wife spousal support for eight years given his advanced age of 61 years and the fact Wife is perfectly capable of working full time, yet unreasonably chooses not to. According to Husband, Wife's testimony clearly reveals that Wife has no plans to further her college education, "has the job skills now to work full time" and thus does not need further training or education, and "admitted she was taking no steps to actually look for full time work – but in fact was actively discouraging that prospect."

{¶ 22} Our review of the record does not support Husband's characterization of Wife's testimony. Wife testified that she went to business school for two years when she was 18 years old but did not complete the program, then went to nursing school but was unable to take the board due to serious family issues. She became a part-time office manager at Regis in 2007 where she is responsible for accounts receivable, commercial leases, and trust funds. She initially testified that she would likely need to learn "some more Excel and Quickbooks" to obtain full-time employment. Wife later stated she needed spousal support "to survive until I'm able to either further my education or find full-time employment at some point down the road." She explained she would further her education by obtaining an Associate Degree in Business, which in turn would allow her to "be more than just an office manager or be able to make an income that I'm comfortable with and save for my retirement." Wife opined she could attend college while working part time. She agreed she did not need to go to college to take Excel and Quickbooks courses but stated she wanted to further her business education and learn about accounting and accounts payable. She admitted she had not looked into schooling as she was concentrating on the

divorce. She had, however, checked into grants and knew she would be able to get grant money due to her age. She further admitted she had not looked into what kind of jobs were currently available as she was focused on the divorce, renovating the rental property, and taking care of the marital home where the parties still lived together. She stated, however, that as her life "settles down some, * * * I will look into full time [employment]." She further reiterated her desire to further her education. Wife's testimony in this regard was reasonable.

{¶ 23} It is well established that weighing conflicting evidence and credibility determinations are matters entrusted to the trial court, which was in the best position to evaluate the evidence and assess the credibility of the parties in light of such nuances as their body language and demeanor. *See Blevins v. Blevins*, 2d Dist. Greene No. 2018-CA-23, 2019-Ohio-297; *Kraft v. Kraft*, 2d Dist. Montgomery No. 25982, 2014-Ohio-4852. Upon thoroughly reviewing the record, including Wife's testimony, we find no abuse of discretion in the trial court's failure to find that Wife was voluntarily underemployed and its failure to impute Wife additional income for spousal support purposes.

### Inclusion of Bonuses into Husband's Income

{¶ 24} Husband next challenges the trial court's determination of his annual income for spousal support purposes. Husband argues that the trial court erred in including his 2018 and 2019 bonuses into his income, thereby overstating his income, because it is speculative whether he will receive a bonus in 2020 as Hollaender's 2019 income was $480,000 below its budgeted net income at the time of the spousal support hearing in June 2019.[1]

---

1. Husband testified that bonuses are based upon the company's financial performance for a calendar year but are paid the following year between March and April. Thus, the bonuses he received in 2019 ($8,125) and 2018 ($5,875) were for 2018 and 2017 respectively.

{¶ 25} We find no abuse of discretion. As we have held, bonuses can appropriately be considered in the calculation of a spouse's spousal support obligation. *See Ghanayem v. Ghanayem*, 12th Dist. Warren Nos. CA2018-12-138 and CA2018-12-142, 2020-Ohio-423; *Ornelas v. Ornelas*, 12th Dist. Warren No. CA2011-08-094, 2012-Ohio-4106. The trial court did not include the two bonuses into Husband's income but simply averaged the bonuses and added that figure to his annual base income of $135,200, as the income Husband can reasonably be expected to receive. In determining Husband's annual income, the trial court did not include the retirement contribution ($5,408) he annually receives from Hollaender pursuant to the company's matching program. Furthermore, the trial court specifically retained jurisdiction over the amount of spousal support.

**Failure to Consider the Tax Consequences of Awarding Spousal Support**

{¶ 26} Husband argues the trial court failed to consider the tax consequences of the spousal support award and asserts that the "amount awarded failed to properly consider his living expenses and over inflated wife's," thereby leaving him with a monthly deficit.

{¶ 27} R.C. 3105.18(C)(1)(I) requires a trial court to consider the "tax consequences, for each party, of an award of spousal support." We find that the trial court considered and addressed the tax consequences of its spousal support award as required by R.C. 3105.18(C)(1)(I). In its decision, the trial court stated it completed a FinPlan analysis which considers the parties' income and monthly expenses "but does not consider the tax consequences of an exchange of spousal support, pursuant to the current Tax Code." In addition, attached to the trial court's decision is a document titled "Summary of Alimony/Child Support Alternative Cases for 2019," a split screen summary analysis that includes a tax analysis for both parties, including each party's "Tax Changes from Alimony."

{¶ 28} Moreover, R.C. 3105.18(C)(1) does not require a trial court to fashion a spousal support award in the most tax advantageous manner or in a manner to obtain a net

tax savings.  *Schuh v. Schuh*, 12th Dist. Butler No. CA2014-01-007, 2014-Ohio-4755, ¶ 15. Rather, the statute only requires the trial court to consider the tax consequences of a spousal support award in conjunction with several other factors.  *Campbell v. Campbell*, 12th Dist. Warren No. CA2009-04-039, 2009-Ohio-6238, ¶ 23 (no factor should be viewed in isolation; instead, courts must look to the totality of circumstances surrounding the award to ensure there has been no abuse of discretion).

{¶ 29} Regarding the parties' expenses, the trial court found that reasonable expenses for Wife were $4,439 per month and $4,828 per month for Husband.  Both parties submitted an affidavit of expenses; both affidavits included expenses for food and restaurant; and both parties were examined regarding their listed expenses.  The trial court noted that one of Wife's largest expenses will be the cost of health insurance previously available through Husband's employment.  The trial court further noted, and the record so supports, that Husband included several of his expenses more than once in his affidavit.

{¶ 30} The trial court declined to consider expenses incurred by either party for their emancipated daughter or other adult children.[2]  The trial court further declined to consider the expenses relating to the vacation home retained by Husband because Husband failed to provide "any documentation regarding the income from the [three] rental properties that he will retain and reasonable expenses related to the upkeep of those properties," choosing instead to only provide the first two pages of the parties' joint income tax returns for 2016 and 2017.  Contrary to Husband's assertion, while the trial court presumed that "in retaining the properties, [Husband] anticipates some profit," the court did not include any income from the rental properties in Husband's income for spousal support calculation purposes.

2. Wife testified that her estimated $600 in food expenses included $200 for her son who was scheduled to move in with her.  Husband's affidavit of expenses included $650 in food for him and the parties' emancipated daughter, an anticipated $400 in car payment in the event the 2011 truck driven by the daughter and with relatively low mileage would need to be replaced, $300 in clothing and $100 in books for the daughter, and $150 in horseback riding lessons presumably for another child of Husband.

Furthermore, a "trier of fact is vested with the authority to weigh the evidence and assess the credibility of the witnesses regarding post-divorce expenses." *Benschoter v. Benschoter*, 5th Dist. Licking No. 17-CA-25, 2017-Ohio-8827, ¶ 74.

{¶ 31} Husband further asserts that the amount of spousal support awarded by the trial court will leave him with a monthly deficit. However, "simply because spousal support creates a negative cash flow for one of the parties does not necessarily lead to a finding of an abuse of discretion." *Id.* at ¶ 73. A trial court must consider all statutory factors when making a spousal support award and not base its determination upon one factor taken in isolation. *Id.* This is just one factor the trial court could consider in making the determination as to spousal support. *Id.* The standard of living achieved by parties during their marriage is often altered upon termination. *Compton v. Compton*, 5th Dist. Stark No. 2014CA00207, 2015-Ohio-4327, ¶ 20. Upon a thorough review of the record, we find no abuse of discretion in the trial court's determination of the parties' reasonable monthly expenses.

{¶ 32} In light of the foregoing, we find that the trial court did not abuse its discretion in awarding Wife spousal support of $3,100 a month for three years and $2,700 a month for the subsequent five years. The trial court reviewed all the relevant R.C. 3105.18(C)(1) factors in determining the amount and duration of the spousal support award, and its decision in this regard is supported by competent and credible evidence. Husband ultimately disagrees with the weight the trial court afforded the applicable factors and the conclusions it drew from the evidence. However, disagreement alone is insufficient to demonstrate abuse of discretion on the trial court's part.

{¶ 33} Husband's first assignment of error is overruled.

{¶ 34} Assignment of Error No. 2:

{¶ 35} SPOUSAL SUPPORT WAS ORDERED TO BE PAID DIRECTLY TO APPELLEE BY THE TRIAL COURT, IT WAS ERROR FOR THE DECREE TO ORDER IT

BE PAID THROUGH CSEA AND INCURE ADDITIONAL 2% PROCESSING FEES THAT APPELLANT WAS ORDERED TO PAY WITH ARREARAGES AND INACCURATE CALCULATIONS.

{¶ 36} As stated above, the trial court issued a decision on October 17, 2019, awarding spousal support to Wife and suggesting that Husband directly pay Wife. As pertinent here, the decision provided that "[t]he parties stipulated that spousal support * * * would begin on August 1, 2019 when [Wife] vacated the residence," and that "[t]his order serves as a temporary order until the filing of the Decree. [Husband] shall make the first payment no later than November 1, 2019, and shall pay arrears at a rate of 10%, to be included with the payment each month until satisfied. Payments shall be postmarked or delivered no later than the first of each month." By contrast, the November 21, 2019 divorce decree ordered that Husband pay spousal support through CSEA and be subject to a two percent processing fee. The divorce decree further found that as of November 30, 2019, there was a $8,990 arrearage in spousal support.

{¶ 37} Husband argues the trial court erred in ordering that spousal support be paid through CSEA because such is contrary to the trial court's decision which "ordered direct pay" from Husband to Wife.

{¶ 38} We find that the trial court did not err in ordering Husband to pay spousal support through CSEA pursuant to the divorce decree. The trial court's decision plainly stated, "This order serves as a temporary order until the filing of the Decree," thus providing a method of direct payment of spousal support only until the divorce decree was journalized. Furthermore, it is well established that a court speaks only through its journal entries and not by oral pronouncement or through decisions. *Holbrook v. Holbrook*, 12th Dist. Warren No. CA2017-05-055, 2018-Ohio-2360, ¶ 12. Therefore, even though the trial court seemingly allowed direct payment of spousal support in its decision, the court was free to

subsequently change its mind and order that spousal support be paid through CSEA in its divorce decree without regard to what it had provided in its decision. Finally, the Ohio Revised Code specifically requires that spousal support payments be made to the CSEA "as trustee for remittance to the person entitled to receive payments" when the court issues a support order. *See* R.C. 3121.44.[3]

{¶ 39} Husband further "submits that the arrearage listed in the Decree [is] inaccurate" as he has made direct payments to Wife pursuant to the trial court's decision. Husband also asserts he should be given a ten-day credit because he did not move out of the marital residence until August 11, 2019.

{¶ 40} We decline to address the alleged inaccurate arrearage amount. Husband's assertion he made direct payments to Wife is a self-serving, conclusory statement lacking any reference to the record. It is not the duty of an appellate court to search the record for evidence to support an appellant's argument as to any alleged error. *Chambers v. Setzer*, 12th Dist. Clermont No. CA2015-10-078, 2016-Ohio-3219, ¶ 7. An appellate court is not a performing bear, required to dance to each and every tune played on an appeal. *Dudley v. Dudley*, 12th Dist. Butler No. CA2019-01-021, 2019-Ohio-4309, ¶ 10. Moreover, Husband's credit argument is nonsensical. The record and divorce decree unequivocally show that Husband was awarded the parties' marital home, Wife was awarded one of the rental

---

3. R.C. 3121.441(A) allows direct payments of spousal support to an obligee in certain circumstances. However, "[a] court that permits an obligor to make spousal support payments directly to the obligee pursuant to division (A) of this section shall order the obligor to make the spousal support payments as a check, as a money order, or in any other form that establishes a clear record of payment." Here, the trial court's decision was silent as to the method of direct payment to be temporarily used by Husband. We also note the Ohio Supreme Court's holding that R.C. 2301.36(A), a predecessor to R.C. 3121.44, does not violate an obligor's constitutional rights to due process and equal protection by requiring the obligor to make spousal support payments through CSEA and remit a two percent processing fee on those payments. *Granzow v. Montgomery Cty. Bur. Of Support*, 54 Ohio St.3d 35 (1990). The supreme court further found that "[i]n relation to the benefit conferred and the costs and risks incurred by the [CSEA] in processing [the husband's spousal support] payments, the two percent fee is reasonable." *Id.* at 39. *See also Ghanayem v. Ghanayem*, 12th Dist. Warren Nos. CA2018-12-138 and CA2018-12-142, 2020-Ohio-423.

properties as her residence, and it is Wife, not Husband, who was required and intended to vacate the parties' marital home on or before August 1, 2019.

{¶ 41} Husband's second assignment of error is overruled.

{¶ 42} Assignment of Error No. 3:

{¶ 43} THE COURT ABUSED ITS DISCRETION IN DENIAL OF EVIDENCE AND FAILURE TO CONSIDER ALL SPOUSAL SUPPORT FACTORS.

{¶ 44} Husband argues the trial court abused its discretion in limiting his "evidence and testimony as it related to what his financial impact annually would be on the simple conversion of being married filing separate to instead filing separate head of household."

{¶ 45} Husband's argument refers to two of his exhibits, Exhibits J and P. Exhibit J is Husband's 2018 last pay stub for the year and includes several handwritten notes and calculations by Husband. The trial court admitted the exhibit but ruled that it would not consider the handwritten annotations as they were not stipulated. Exhibit P is titled "2019 Withholding Calculator," was seemingly obtained from the IRS website, and includes Husband's handwritten calculations. Husband intended to use the exhibit to show what he believed his postdivorce tax rate would be. The trial court did not admit Exhibit P into evidence and did not allow Husband to testify about his future tax rate. The trial court ruled that such self-generated evidence was hearsay and speculative as Husband's income for 2019 was not yet determinable.

{¶ 46} A trial court has broad discretion in the admission or exclusion of evidence and, absent a clear abuse of discretion, a reviewing court will not disturb the trial court's decision. *Weisbecker v. Weisbecker*, 12th Dist. Butler No. CA2005-10-421, 2006-Ohio-5840, ¶ 20. We find no abuse of discretion in the trial court's exclusion of Exhibit P, its refusal to consider Husband's handwritten annotations on Exhibit J, and in not allowing Husband to testify about what his future tax rate might be.

{¶ 47} Husband's third assignment of error is overruled.

{¶ 48} Judgment affirmed.

S. POWELL and PIPER, JJ., concur.