[Cite as *Folberth v. Folberth*, 2022-Ohio-3384.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

PETER JAMES FOLBERTH,        :

     Appellee and Cross-Appellant,      :       CASE NOS. CA2021-05-047
                                                           CA2021-05-049

                                              :

    - vs -                                       :           O P I N I O N
                                               :           9/26/2022

PAMELA GAIL FOLBERTH,         :

     Appellant and Cross-Appellee.      :

APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. DR19-01-0008

The Lampe Law Office, and Thomas S. Sapinsley; Stagnaro Hannigan Koop, Co., LPA, and Michaela M. Stagnaro, for appellee and cross-appellant.

Traci Combs-Valerio, LLC, and Traci Combs-Valerio, for appellant and cross-appellee.

**PIPER, J.**

## Procedural History

{¶1} On January 8, 2019, James Folberth ("Husband") filed an amended complaint for divorce against Pamela Folberth ("Wife") in the Butler County Court of Common Pleas, Domestic Relations Division. Wife answered and counterclaimed on January 31, 2019.

The parties resolved significant issues through stipulations, including ownership of the marital residence, property inventories, and, for purposes of this appeal, significant financial accounts that accrued interest, dividends, and other gains.

{¶2} The issue of the amount of spousal support Husband was to provide Wife was not resolved through stipulation or settlement. The trial court held several hearings between August and November 2019. After taking the matter under advisement, the trial court ruled on the remaining disputed issues, set the amount of spousal support, and entered a final decree of divorce on April 19, 2021. Wife filed an appeal and Husband filed a cross-appeal. The appeals were consolidated. Subsequently, Wife moved to dismiss her appeal. On December 15, 2021, this court issued an entry reinstating Husband's pending claims. As a result, this appeal only addresses Husband's assignment of error.

**Relevant Facts**

{¶3} Husband and Wife married on July 31, 1999. Prior to their marriage, the parties entered into an antenuptial agreement. Under the terms of the agreement, the parties agreed to waive claims to each other's separate property held at the time of their marriage including any appreciation upon those assets as stated in paragraph 3.02. Paragraph 3.03 of the agreement provided:

> In the event of a legal separation or a termination of the parties' marriage by annulment, divorce, or dissolution proceeding in a court of competent jurisdiction, this agreement shall thereupon be conclusive as to the ownership of the property listed in Exhibit A, and neither party shall take, demand, claim or receive any such property listed in Exhibit A in a division of property or as spousal support and maintenance.

Paragraph 3.05 of the agreement further addressed spousal support in the event of a termination of the marriage by providing:

> This agreement does not preclude spousal support, if appropriate, in the event the parties ever divorced; however, this

agreement is not intended to create a right to spousal support if none exists at the time the parties ever divorced.

The agreement also specified that any assets acquired after the marriage should be designated as marital property:

All assets acquired after the marriage, including interest, dividends and appreciation earned on such after acquired assets, shall be designated as marital property unless specifically excluded herein or designated as non-marital property by statute.

{¶4} Husband filed his complaint for divorce nearly 20 years later. Since their marriage, the parties have accumulated more assets. At the time the parties entered into the antenuptial agreement, Husband listed net assets in the amount of $1,748,344, while Wife had net assets in the amount $215,300. By the time of their divorce, the trial court calculated that Husband retained $3,573,759 in assets while Wife retained $1,139,986.[1]

{¶5} Although the parties had reached agreement on a number of issues, they were not able to resolve the issue of spousal support. A portion of testimony was spent focusing on Husband's financial maneuverings. This included the introduction of testimony concerning Husband's separate assets that have since evolved from the assets listed in "Exhibit A" in the antenuptial agreement. Initially, there was discussion below about the need to obtain expert testimony concerning the valuation or tracing of the accounts below. There is no dispute that the identity of the accounts listed in "Exhibit A" have changed in the two decades since the parties were married. The record reflects that, over the years, Husband moved some marital assets into different accounts while preserving much of his own separate accounts. There was also evidence that Husband controlled the parties' finances and that Wife's business had operated at a loss in certain years, which was then

---

1. The trial court noted that $708,785 of Wife's amount is either in a retirement account or consists of business assets that must be maintained so that she can earn income until retirement.

claimed as a business loss on their joint income tax returns. Despite some uncertainty below, the parties determined there was no longer a need for expert testimony after they entered into their stipulations. In relevant part, the parties agreed that several accounts should be shared while others should remain Husband's separate property. The parties' stipulated ownership interests and approximate valuations of the accounts are listed below:

| Husband's interest | Property[2] | Wife's interest |
|---|---|---|
| 100% | Ameriprise 0154 ($1,602,621.31) | 0% |
| 100% | Ameriprise 6918 ($1,202.18) | 0% |
| 65% | Ameriprise 5754 ($488,525.92) | 35% |
| 50% | Ameriprise 4190 ($131,635.06) | 50% |
| 50% | Huntington Bank 5776 ($52,368.80) | 50% |
| 50% | Raymond James 1914 ($84,430.20) | 50% |

{¶6} In addition to these accounts, the parties also entered into a stipulation regarding Husband's pension from Northrup Grumman that was to be divided by a Qualified Domestic Relations Order ("QDRO").

{¶7} At the time of the final hearing, both parties were 62 years old and had no significant health problems. Husband testified that he retired in 2015 and was no longer employed in any capacity. Husband has an engineering degree and previously worked as an engineer for Northrop Grumman and BIT Systems. Husband's income is derived from his interest and dividends on investments, along with his monthly pension from Northrop Grumman. When considering Husband's income, the trial court noted that there were irregularities in some of the transactions that had occurred over the years. The trial court

---

2. The value of these accounts has likely changed. The trial court listed these values in the property division, which neither party disputes.

found that the most reliable evidence for determining investment income came from the parties' tax returns. The trial court also noted that Husband has a trust that provides income. The trial court stated that review of the 2016 tax return revealed that Husband received gross income in the amount of $37,001 in dividends. The trial court also noted that Husband failed to include all schedules in his 2017 and 2018 tax returns and that it was unable to determine the specific source of all his income or the status of his investments for those years. Therefore, the trial court averaged the additional sources of income from 2016 through 2018 and determined that Husband could reasonably expect an additional $44,447 annually.

{¶8} Wife testified that she earned a high school diploma and was raised in her family sewing business, Sew-Ezy, which she operated prior to the marriage. Wife testified that she did not have any retirement accounts and that the mutual funds that she once had are now gone. Wife testified that her business has been declining due to several factors, including internet sales and the loss of a larger sewing machine contract. The trial court noted that Wife filed her own separate tax return for 2017, which showed more reasonable expenses than past years, and determined that the business could generate a reasonable net income for her of $16,454.

{¶9} In determining spousal support, the trial court placed significant emphasis upon the parties' income from all sources, their relative earning abilities, retirement benefits, and relative assets and liabilities. The trial court averaged the interest and dividend income for the accounts and calculated the amount of annual income the parties could expect in determining the award of spousal support. The trial court also found that Husband had other sources of income based upon review of his tax returns. Thus, the trial court found the parties could expect annual income from various sources as follows:

| Income source | Husband | Wife |
|---|---|---|
| Northrop Grumman pension | $8,468.04 | $8,468.04 |
| Sew-Ezy | $0 | $16,454 |
| Ameriprise 0154 | $28,982 | $0 |
| Ameriprise 4190 | $4,898.50 | $4,898.50 |
| Ameriprise 5754 | $9,595 | $5,166.35 |
| Other income | $44,447 | $0 |

{¶10} The trial court also placed significant emphasis on the assets held by the parties in deciding to award Wife spousal support. The trial court observed that Husband retains a significant investment in his firearms collection, which was purchased with a combination of marital and non-marital funds. Husband also retains the marital residence with a value of $400,000 and no mortgage encumbrance.

{¶11} The trial court found that Wife has no retirement savings other than what she was allocated from Husband's pension. It also noted that Wife operates a business which is not highly profitable and has nominal income besides the income she receives from the allocation of the Ameriprise accounts. Wife was allocated her business assets and real estate at their stipulated value.

{¶12} Following a thorough review of the evidence introduced below, the trial court determined that Husband's reasonable monthly expenses were $3,568 and that Wife's reasonable monthly expenses were $4,384. The trial court found that Wife should be awarded spousal support in the amount of $2,200 per month.[3] The trial court ordered that spousal support continue until Wife's death, remarriage, or cohabitation with another adult. The trial court retained jurisdiction over the amount of spousal support. The trial court calculated that, after the completion of the property division and following the payment of spousal support, Husband would have net monthly income of $5,065 and Wife would have

---

3. The trial court ordered spousal support to decrease from $2,900 to $2,200 following the completion of the property division.

net monthly income of $4,811. After the trial court entered its final decree, the parties timely appealed. Following the dismissal of Wife's appeal, the only matter now pending is Husband's appeal. We now consider Husband's sole assignment of error:

{¶13} Assignment of Error No. 1:

{¶14} THE TRIAL COURT ERRED AS A MATTER OF LAW, AND ABUSED ITS DISCRETION, REGARDING THE AWARD OF SPOUSAL SUPPORT TO APPELLANT/CROSS-APPELLEE.

{¶15} Husband argues the trial court erred in its spousal support determination. A trial court has broad discretion in determining whether to award spousal support, as well as the amount and duration of such award, based on the facts and circumstances of each case. *Curry v. Curry*, 12th Dist. Butler No. CA2016-07-136, 2017-Ohio-8127, ¶ 15. Absent an abuse of discretion, a spousal support award will not be disturbed on appeal. *Id.*

{¶16} "A trial court has a statutory duty to base a spousal support award order on a careful and full balancing of the factors in R.C. 3105.18(C)(1)." *Id.* at ¶ 13. These factors include:

> (a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;
>
> (b) The relative earning abilities of the parties;
>
> (c) The ages and the physical, mental, and emotional conditions of the parties;
>
> (d) The retirement benefits of the parties;
>
> (e) The duration of the marriage;
>
> (f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;
>
> (g) The standard of living of the parties established during the

marriage;

(h) The relative extent of education of the parties;

(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;

(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;

(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;

(l) The tax consequences, for each party, of an award of spousal support;

(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;

(n) Any other factor that the court expressly finds to be relevant and equitable.

R.C. 3105.18(C)(1)(a)-(n); *Macknight v. Macknight*, 12th Dist. Butler No. CA2021-07-078, 2022-Ohio-648, ¶ 47.

{¶17} Husband challenges several aspects of the trial court's decision awarding Wife spousal support. He takes issue with the trial court's calculation of his income, the calculation of Wife's income, as well as the duration of support. He also separately claims the trial court erred in determining the amount of spousal support awarded. We will address each issue below.

**Antenuptial Agreement**

{¶18} We begin by addressing Husband's first issue, which is the overarching issue in this appeal. Husband argues that the trial court erred when it calculated his income for purposes of determining reasonable spousal support. He does so by claiming that the

antenuptial agreement he had with Wife prohibited the trial court from considering the income he generates from his separate property interests. For example, there is no dispute that Husband retained the entirety of his separate property interest in the Ameriprise 0154 account, which contained approximately $1,602,621.31. From that account, the trial court found that Husband could expect to earn approximately $28,982 in annual income.[4]

**{¶19}** An antenuptial agreement is a contract which determines the distribution of assets of each party when the marriage terminates. *Dever v. Dever*, 12th Dist. Clermont Case No. CA98-07-050, 1999 Ohio App. LEXIS 1625, at *8 (Apr. 12, 1999), citing *Fletcher v. Fletcher*, 68 Ohio St. 3d 464, 466-67 (1996). Determining the construction of a contract is a matter of law that is subject to de novo review. *Id. See Menkhaus v. Menkhaus*, 1st Dist. Hamilton Nos. C-210219 and C-210430, 2022-Ohio-2369, ¶ 31

**{¶20}** "When the terms of the contract are clear and unambiguous, courts may not create a new contract by finding intent not expressed by the terms." *Menkhaus* at ¶ 31, citing *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 245-246 (1978). "In analyzing an unambiguous contact, words must be given their plain and ordinary meaning." *Id.* "If a contract, or portions of a contract, are found to be ambiguous, then the courts must resort to principles of contract construction." *Id.* at ¶ 17, citing *Shifrin v. Forest City Ent., Inc.*, 64 Ohio St.3d 635, 638 (1992). "'All provisions of a contract must be construed together in determining the meaning and intention of any particular clause or provision therein.'" *Id.*

**{¶21}** Husband's argument is based, in part, upon language contained in paragraph 3.03 of the agreement, which states:

---

4. The trial court's decision discusses the antenuptial agreement, but does not discuss the issue Husband now raises in depth. From review of the record, it appears the trial court did not find any merit to Husband's arguments.

> In the event of a legal separation or a termination of the parties' marriage by annulment, divorce, or dissolution proceeding in a court of competent jurisdiction, this agreement shall thereupon be conclusive as to the ownership of the property listed in Exhibit A, and neither party shall take, demand, claim or receive any such property listed in Exhibit A in a division of property or as spousal support and maintenance.

Husband then cites to paragraph 3.05 of the antenuptial agreement, which states:

> This agreement does not preclude spousal support, if appropriate, in the event the parties ever divorced; however, this agreement is not intended to create a right to spousal support if none exists at the time the parties ever divorced.

In arguing his position, Husband does not direct this court to any other applicable provision but concludes "it appears, from the plain and unambiguous language of the Agreement, that any income realized or generated by a party's separate asset could not be considered for spousal support and maintenance (See, Antenuptial Agreement, para. 3.05)." Nevertheless, we have reviewed the antenuptial agreement in its entirety.

{¶22} Pursuant to the parties' stipulations, the antenuptial agreement is both valid and binding. Wife, however, does not agree with Husband's interpretation of the antenuptial agreement. In accordance with the stipulations, Husband has retained significant separate property interests. The issue before this court is whether the antenuptial agreement limits the amount of spousal support owed to Wife because a portion of Husband's income is derived from his separate property.

{¶23} Following review of the record, including the clear and unambiguous language contained in the parties' antenuptial agreement, we find Husband's argument to be without merit. While Husband argues that the antenuptial agreement prevents a court from considering income he generates from his separate assets, his argument represents a significant departure from the plain language used by the parties in the antenuptial agreement. That is, the clear and unambiguous language of the agreement clearly provides

that the separate property listed in "Exhibit A" is to be "conclusive" as to the ownership issues of each party. This means that neither party is entitled to "take, demand, claim, or receive" any such separate property in a division or property or as spousal support and maintenance. Paragraph 3.05 merely states that the agreement does not preclude spousal support. However, the agreement is silent as to whether the income produced by the separate property may be considered for purposes of spousal support.

{¶24} As such, we conclude that while the antenuptial agreement states premarital or separate assets cannot be given as a property award or as spousal support, it does not specifically exclude the court from considering the income that those assets generate for purposes of determining spousal support. If the parties had intended to limit the award of spousal support based upon this separate property interest, the agreement should have specified as much. Instead, the agreement contemplated an award of spousal support without any such limitation in how Husband's income was calculated. Paragraph 3.05 merely states:

> This agreement does not preclude spousal support, if appropriate, in the event the parties ever divorce; however, this agreement is not intended to operate a right to spousal support if none exists at the time the parties ever divorced.

Rather than operating as a limitation to the calculation of Husband's income, paragraph 3.03 only prevents the outright allocation of separate property held prior to the marriage.

{¶25} Similar arguments have been made and rejected in the past. In *Cole v. Cole*, 8th Dist. Cuyahoga No. 84319, 2004-Ohio-6638, the Eight District considered a similar argument where a husband claimed that an award of spousal support was improper because it exceeded the income he receives from marital property. *Id.* at ¶ 24. Husband argued that the trial court was essentially awarding his wife a portion of his separate property which was prohibited by the parties' antenuptial agreement and their stipulation

that any passive income or appreciation of their separate property would remain their own. *Id.* The court of appeals rejected husband's argument, noting that the antenuptial agreement contained no provision regarding spousal support and the parties' stipulation did not state that income derived from their separate income could be excluded from the spousal support calculation. *Id.* at ¶ 25.

{¶26} Despite his arguments to the contrary, there is no provision in the agreement that specifically excludes consideration of income generated from Husband's separate property in calculating reasonable spousal support. This conclusion is consistent with this court's prior decisions where we have repeatedly distinguished between "property" distributed to a spouse and consideration of the "income" produced by the property for support purposes. *Sieber v. Sieber*, 12th Dist. Butler Nos. CA2014-05-106 and CA2014-05-114, 2015-Ohio-2315, ¶ 57; *Ghanayem v. Ghanayem*, 12th Dist. Warren Nos. CA2018-12-138 and CA2018-12-142, 2020-Ohio-423. In *Ghanayem*, this court held that the husband's future bonuses, some of which came in the form of stock options, were appropriate considerations in the calculation of support obligations. *Id.* at ¶ 22. Although those bonuses were appropriate in calculating the spousal support award, this court made clear that the wife did not have a separate property interest in husband's stock account, wherein the stocks he earned were held. *Id.* at ¶ 25. While *Ghanayem* did not involve application of an antenuptial agreement, we find it mentionable because it highlights an area of law that is sometimes confused by litigants, namely the distinction between "property" and "income" as it relates to support calculations. *Id.* at ¶ 24-25.

{¶27} While Husband argues differently, the plain language of the antenuptial agreement does not specifically exclude income he derives from his separate property in the calculation of spousal support. As a result, we find the trial court did not err by including

those income sources in its calculation of support.

## Husband's Other Income

{¶28} Husband raises another issue with the trial court's decision regarding his income, including the "other income" that the trial court determined Husband could reasonably expect to earn in a given year. As previously stated, the trial court noted that there were irregularities in certain transactions, yet found that the most reliable evidence was the parties' income tax returns for determining investment income. The trial court found that Husband has a trust that provides income. The trial court considered Husband's tax returns between 2016-2018 to ascertain the amount of money he could reasonably expect each year. Since Husband did not include all schedules with his 2017 and 2018 tax returns, the trial court was unable to determine the sources of Husband's "other income." Therefore, due to the evidence Husband produced, the record does not clearly establish how much income reported was capital gains income. As a result, the trial court considered a three-year average of "other income" and found that Husband could expect an average of $44,447 in "other income."

{¶29} On appeal, Husband argues that the trial court's decision was erroneous for a number of reasons, claiming inter alia, that once again the sums should have been excluded based upon application of the antenuptial agreement, that any capital gains income is non-recurring, that the trial court erred in utilizing the gross figure as opposed to the net figure, and that the trial court should have considered other capital losses and averaged his gains and losses over a different period of time.

{¶30} Despite his arguments to the contrary, we find the trial court's decision regarding the calculation of his income did not amount to an abuse of discretion. Although Husband raises a litany of issues on appeal without much elaboration, we find no err in the

trial court's consideration of the evidence before it. Husband had ample opportunity to present his issues for the trial court's consideration below. Since Husband did not include all schedules with his 2017 and 2018 tax returns, the trial court was unable to determine the sources of Husband's "other income." While Husband argues that this three-year period was too short and not representative of his earnings, it is well established that weighing conflicting evidence and credibility determinations are matters entrusted to the trial court, which was in the best position to evaluate the evidence and assess the credibility of the parties. *Spillane v. Spillane*, 12th Dist. Butler No. CA2019-12-206, 2020-Ohio-5052, ¶ 23. Upon thoroughly reviewing the record, we find no abuse of discretion in the calculation of Husband's income for spousal support purposes. We further note, that if these figures change, Husband may seek relief by seeking a modification of his spousal support. R.C. 3105.18(F); *Samblanet v. Samblanet*, 12th Dist. Butler No. CA2013-03-040, 2013-Ohio-5768, ¶ 19.

**Wife's Income**

{¶31} Husband also alleges the trial court erred in its calculation of Wife's income. He states that Wife had $12,159 in capital gains in 2017. On appeal, Husband suggests that if he had capital gains income, then Wife should also have capital gains income. Although he admits that Wife's 2018 tax return was not admitted in evidence, he states that Wife should have other interest and dividend income that should be included in the calculation of her income. Husband admits, though, that such a calculation would be "pure speculation." Despite this acknowledgement, Husband then calculates an approximate value that he believes should be calculable to Wife based upon assumptions that he roughly calculates in his brief.

{¶32} Following review, we find the trial court did not abuse its discretion in the

calculation of Wife's income. Although there is some confusion surrounding the issues here, we agree that attributing more income to Wife through additional sources would be pure speculation. *Gerdes v. Gerdes*, 12th Dist. Butler No. CA2019-07-106, 2020-Ohio-3405, ¶ 21 (an appellate court does not engage in speculation); *Wilhoite v. Kast*, 12th Dist. Warren No. CA2001-01-001, 2001-Ohio-8621, 2001 Ohio App. LEXIS 5996, *23 (Dec. 31, 2001) ("[a] meaningful review of a trial court's decision must be based on the record before us, not mere conclusory assertions in an appellate brief"). Confusion surrounding this issue is further compounded because Husband fails to inform this court of the source of the capital gains. He generically states that Wife should have capital gains income for 2018 but admits that he is speculating. Husband may be suggesting that a financial account which Wife retains some ownership of accrued some form of capital gain. Nevertheless, there is no clear indication for this court to conclude that Wife retained an asset from which there will be a capital gain that should be considered in the calculation of spousal support at this time. Without more, this court is left to speculate about any capital gain that should be attributable to Wife.

{¶33} In this case, the trial court conducted a thorough analysis of Wife's income. The trial court found that Wife's sewing business had a net income of $14,212 in the parties' first year of marriage. The next year, the business had a net income of $22,782. The trial court noted that the business expensed significant resources over the course of several years that resulted in losses. Wife testified that the business had taken a downturn. Husband did not dispute that the business had a poor outlook. After considering the respective testimonies, the trial court concluded that Wife "is working closer to her capacity given her formal education level and lack of work experience outside of the sewing business." Husband failed to present any concrete evidence that Wife could earn more

than she is earning now. *See Daniel v. Hester*, 12th Dist. Butler No. CA2016-02-037, 2016-Ohio-7543, ¶ 17 (spouse did not meet burden of proof therefore the appellate court cannot find that the court abused its discretion in failing to impute income to the other spouse). Accordingly, we find the trial court did not abuse its discretion in determining that Wife could expect $16,464 in yearly earnings along with the other sources pursuant to the parties' stipulation.[5]

**Calculation of Spousal Support Award**

**{¶34}** Husband's third issue argues that the trial court erred in establishing the amount of spousal support. Husband states that until the division of assets between the parties, he will have a spousal support obligation of $2,900 per month and that Wife will receive 56 percent of their combined income. However, he also acknowledges that once the property division is complete, Husband's obligation will be reduced to $2,200 per month. At that point, Wife will have 49 percent of their combined income while Husband will have 51 percent. Husband argues that the trial court's award does not need to equalize the parties' incomes and suggests that the award is intended to penalize him for actions taken during the marriage. He also asserts that the trial court was overly concerned with the disparity of incomes and assets of the parties when that disparity predated the marriage.

**{¶35}** Following review, we find Husband's argument is without merit. The record in the present case demonstrates the trial court reviewed all relevant R.C. 3105.18(C)(1) factors in determining the amount and duration of the spousal support award. The trial court

---

5. Husband also notes that Wife's business "showed a loss in most years" because it had been heavily expensed. As noted previously, there was testimony that Husband was in charge of the parties' finances, which included some involvement in Sew-Ezy. Husband claims that the trial court failed to "add back in $3,438.00 deducted as a business expense." We find no error with the trial court's decision. The trial court heard testimony on this issue. It was undisputed that the business was not doing well. The parties had claimed losses on the business in their joint tax returns. Considering the evidence presented, the trial court's calculation of Wife's income was reasonable and not an abuse of discretion.

specifically stated that it considered factors of particular significance, including "the length of the parties' marriage, the parties' disparate incomes from various financial assets, the depletion of marital assets, [Wife's] lack of income from independent assets or retirement, her limited earning capacity through her business, and the extensive assets retained by [Husband]." The trial court cited the relevant factors with an appropriate analysis considering the applicability of the factor and the relative weight it had in the court's ultimate decision. On appeal, it is clear Husband disagrees with the weight the trial court afforded the applicable factors and the conclusions it drew from the evidence. However, disagreement is insufficient to demonstrate the trial court abused its discretion. *See Spillane*, 2020-Ohio-5052 at ¶ 32. There is no evidence that the trial court intended to penalize Husband or that it was overly concerned with any other consideration, prejudicially impacting Husband. Accordingly, we find the trial court's decision is supported by competent and credible evidence.

### Duration of Spousal Support/Reservation of Jurisdiction

{¶36} In his fourth issue, Husband argues that the trial court's award of indefinite spousal support was an abuse of discretion. In addition, he argues the trial court failed to reserve jurisdiction.

{¶37} An award of spousal support of an indefinite duration is authorized where the marriage was long term, the parties are of advanced age, or there is a homemaker-spouse with little opportunity to develop meaningful employment outside the home. *Gillespie v. Gillespie*, 12th Dist. Clermont No. CA2011-05-034, 2012-Ohio-51, ¶ 9, citing *Kunkle v. Kunkle*, 51 Ohio St.3d 64, 68-69 (1990). Further, the payee spouse must not have the resources, ability, and potential to be self-supporting. *Id.* Marriages lasting 16 to 17 years, a lesser duration than in this case, have been found to be long term for the issuance of

indefinite spousal support. *Id*; *Coward v. Coward*, 5th Dist. Licking No. 15-CA-46, 2016-Ohio-670, ¶ 10.

{¶38} In the present case, the trial court ordered spousal support to continue indefinitely subject to termination by the death of either party or Wife's remarriage or cohabitation. Based upon our review of the record, we find the trial court did not abuse its discretion in this regard. This was a marriage that lasted approximately 20 years. Both parties are at or near retirement. Husband has retained significant assets that generate income. Again, if circumstances change, he is entitled to seek a reduction of spousal support. R.C. 3105.18(F); *Samblanet*, 2013-Ohio-5768 at ¶ 19. We are aware that Husband is claiming the trial court did not reserve jurisdiction as to the duration of spousal support suggesting that he is without the ability to revisit this issue should there be a change in circumstances. However, the trial court's entry clearly states that it retained jurisdiction over the amount of spousal support. We do not understand the trial court's reservation of jurisdiction to be prejudicial to Husband, nor does it prevent him from seeking a reduction in spousal support should there be a change in circumstances. Accordingly, we find the trial court did not abuse its discretion in ordering an indefinite duration of spousal support.

{¶39} Following review of entire record and issues raised by Husband, we find the trial court did not err in its calculation of spousal support. Husband's sole assignment of error is overruled.

{¶40} Judgment affirmed.

M. POWELL, P.J., and S. POWELL, J., concur.