[Cite as *Naiman v. Naiman*, 2025-Ohio-1589.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

KYLE PRESTON NAIMAN, :

    Appellant and Cross-Appellee, :

    - vs - :

APRIL NICHOLE NAIMAN, :

    Appellee and Cross-Appellant. :

CASE NO. CA2024-06-074

O P I N I O N
5/5/2025

APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. DR21110972

Strauss Troy Co. LPA, and Carrie R. Waide, for appellant and cross-appellee.

The Lampe Law Office, LLC, and Stephen J. Otte and Thomas S. Sapinsley, for appellee and cross-appellant.

**SIEBERT, J.**

{¶ 1} Kyle Naiman ("Husband"), plaintiff-appellant/cross-appellee, and April Naiman ("Wife"), defendant-appellee/cross-appellant, appeal from the Butler County Court of Common Pleas, Domestic Relations Division's judgment granting their divorce.

{¶ 2} Husband presents four principal issues for our review: whether the trial court

properly imputed income to him for child-support calculations despite his Veterans Administration disability designation; whether attorney fees—previously awarded by the magistrate and partially adopted by the trial court—were erroneously withheld; whether certain cash assets were correctly classified as marital rather than separate property; and whether the court appropriately accepted Wife's expert's valuation of her business. Wife's cross-appeal raises a single issue: the trial court's failure to classify and distribute disputed silver coins and collectibles.

{¶ 3} We find partial merit in Husband's attorney-fees argument. Civ.R. 37 mandates fee awards in successful motions to compel discovery—a requirement the trial court overlooked despite adopting the magistrate's corresponding order. We likewise agree with Wife that the disputed silver coins and collectibles demanded classification as either marital or separate property, followed by equitable division. We find no merit in any other issue raised.

{¶ 4} Accordingly, we affirm in part, reverse in part, and remand for further proceedings.

## I. Factual and Procedural Background

{¶ 5} Husband and Wife were married on April 21, 2007, and had three minor children at the time of their divorce. The divorce proceedings commenced when Husband filed a complaint for divorce on November 30, 2021, initiating what would become protracted litigation spanning six days of final hearings between June and October 2023.

{¶ 6} Central to the parties' dispute was Husband's employment status. Husband served in the United States Navy from 2007 to 2012. In February 2020, he received a determination from the Department of Veterans Affairs granting him benefits for a 100% service-connected disability based on a diagnosis of long QT syndrome (LQTS), a cardiac condition that can lead to potentially life-threatening arrhythmia. Shortly thereafter, in April

- 2 -

2020, Husband left his employment in the pharmaceutical industry, where he had previously earned annual incomes ranging from approximately $89,000 to $220,000. Husband testified that he left the workforce due to health concerns related to his LQTS diagnosis, believing that the stress of employment posed a significant risk to his health. His disability benefit is $44,400 per year.

{¶ 7} Despite his claimed inability to work due to stress-related health concerns, evidence showed that Husband regularly engaged in vigorous physical activities, including weightlifting exercises where he demonstrated considerable strength and exertion. Dr. Kenneth Manges, a vocational expert who testified at trial, opined that Husband remained employable in either the pharmaceutical industry or in lower-stress environments, with potential earnings between $80,000 and $111,000 annually. Husband acknowledged that he was capable of working but had chosen not to do so, preferring to pursue activities such as selling eggs from the farm and woodworking.

{¶ 8} Wife, meanwhile, had developed a successful business as a SuperStar Director with Scentsy, a multi-level marketing company selling fragrance and personal care products. Her business involved leading approximately 3,700 consultants in her "downline" business. The valuation of Wife's Scentsy business became a hotly contested issue at trial, with Husband's expert valuing it at $352,000 and Wife's expert at merely $26,000. The stark difference in valuations stemmed from different methodologies and assumptions about the transferability of Wife's business interest within Scentsy's restrictive business structure.

{¶ 9} The pre-decree litigation was marked by several contentious incidents. Wife filed a petition for a domestic violence civil protection order against Husband in March 2022, resulting in his temporary removal from the marital residence. This petition was subsequently dismissed after several days of hearings, with the magistrate finding Wife

filed it in bad faith to gain leverage against Husband in the divorce proceeding. Following Husband's removal from the residence, Wife found an ammunition box in the residence that contained personal property as well as $14,500 in cash. Wife removed the box from the home and gave it to her attorney, who deposited the cash into a trust account.

{¶ 10} This removal of property led to even more pre-decree litigation. Husband filed a motion to hold Wife in contempt of the court's mutual restraining order prohibiting the removal of any property and for an order requiring her to return the property. Husband claimed that a friend had given him $9,500 of the cash to help with legal fees. On July 8, 2022, after a hearing, the magistrate found that Wife had violated the restraining order by removing the property, including the cash. The magistrate ordered her to return the property and ordered that the cash be released from Wife's attorney's trust account. The magistrate had noted in a previous order, though, that any orders were "temporary orders only and not final determinations as to marital versus separate property and/or debts, etc." The trial court noted that at some point during the case, $5,000 was split between the parties with each receiving $2,500.

{¶ 11} Additionally, on July 20, 2022, the magistrate issued an order finding Wife in contempt for violating the court's restraining order by removing the property from the residence. The order granted Husband attorney fees but expressly preserved the issue of the amount of attorney fees for later determination, stating that "[p]resentation of evidence of attorney fees related to the contempt issues may be presented at the final hearing." Wife filed objections asking the court to set aside the magistrate's contempt finding and attorney-fee award, but it appears that the court never ruled on the objections.

{¶ 12} Throughout the proceedings, Husband and Wife had disputes over discovery. On February 2, 2023, the magistrate granted Husband's motion to compel, filed under Civ.R. 37, due to Wife's failure to cooperate in producing discovery of her

- 4 -

income and the value of her business. The magistrate granted Husband attorney fees and held that the amount of the attorney fee award would be determined during the final hearing. Wife filed objections to the magistrate's decision. The trial court overruled these objections and adopted the magistrate's decision on May 15, 2023. The court's adoption of the magistrate's decision specifically noted that the court had "performed an independent review of all issues of fact and law determined by the Magistrate" and found the decision "based on sound reasoning." The entry affirmed the magistrate's decision "in all respects," which necessarily included the determination that Husband was entitled to attorney fees related to the motion to compel, with the amount to be determined during the final hearing. At trial, Husband presented evidence of the attorney fees that he had incurred, including the fees specifically related to the motion to compel.

{¶ 13} Among the parties' assets was a marital residence, vehicles, retirement accounts, bank accounts, and personal property, including a collection of silver coins and collectibles. The parties disagreed about who should get the silver coins and collectibles, and these items were explicitly listed as a disputed issue in their joint trial stipulations.

{¶ 14} On January 12, 2024, the trial court issued its decision and order on disputed matters. The court imputed income of $105,000 to Husband for child-support purposes after finding him voluntarily unemployed. The court valued Wife's Scentsy business at $26,000, adopting her expert's valuation over Husband's. The court found that the $14,500 in cash was marital property and allocated $9,500 to Husband subject to offset. The court also allocated various marital assets between the parties. Despite the previous orders granting Husband attorney fees for Wife's contempt and discovery violations, the court summarily declined to award attorney fees to either party, stating only that "[a]fter reviewing the factors set forth in ORC § 3105.73, the Court declines to grant either party an award of attorney fees." The court also made no mention of the silver coins

- 5 -

and collectibles that had been listed as a disputed issue. On May 16, 2024, the court entered its decree of divorce.

{¶ 15} Husband appealed, and Wife cross-appealed.

## II. Analysis

{¶ 16} Husband presents four assignments of error challenging the imputation of income, the denial of attorney fees, the characterization of cash as marital property, and the valuation of Wife's business. Wife presents one cross-assignment of error challenging the trial court's failure to value and divide the silver coins and collectibles.

### A. The imputation of income to Husband

{¶ 17} The first assignment of error alleges:

> THE TRIAL COURT ERRED IN FINDING HUSBAND TO BE VOLUNTARILY UNEMPLOYED AND IMPUTING INCOME TO HUSBAND FOR THE PURPOSES OF CALCULATING CHILD SUPPORT.

{¶ 18} Husband's primary contention in the first assignment of error is that the trial court erred by finding him voluntarily unemployed and imputing income of $105,000 for purposes of child-support calculations. His argument hinges on R.C. 3119.05(I), which he claims prohibited the court from rendering such a finding without first determining that it would be "unjust or inappropriate and therefore not in the best interests of the child."

{¶ 19} We begin with a threshold matter. Wife suggests this issue is moot because Husband secured employment with annual earnings of approximately $130,000 before the decree was filed. While courts may indeed take judicial notice of mootness when circumstances warrant, *se In re Adoption of C.E.S.*, 2020-Ohio-6902, ¶ 3, we decline that invitation here. The evidence of Husband's subsequent employment falls outside the trial court record, and the health risks that allegedly motivated his unemployment remain a live controversy. The issue of whether the trial court properly imputed income to Husband

is thus not moot, and we proceed to consider the merits.

{¶ 20} For purposes of calculating child-support obligations, a domestic relations court must determine the annual income for each parent. *Jestice v. Jestice*, 2024-Ohio-122, ¶ 25 (12th Dist.). "Income" encompasses either a parent's gross income when fully employed, R.C. 3119.01(C)(10)(a), or, for an "unemployed or underemployed" parent, "the sum of the gross income of the parent and any potential income of the parent," R.C. 3119.01(C)(10)(b). "Potential income" includes imputed earnings that the court determines a parent would have secured if fully employed, based on the criteria enumerated in R.C. 3119.01(C)(18)(a)(i)-(x), as well as any other relevant factor, R.C. 3119.01(C)(18)(a)(xi).

{¶ 21} Before a trial court may impute income to a parent, though, the court must make the preliminary determination that the parent is voluntary unemployed or underemployed. This determination concerns "matters to be determined by the trial court based upon the facts and circumstances of each case." *Rock v. Cabral*, 67 Ohio St.3d 108 (1993), paragraph one of the syllabus. The trial court has broad discretion to make this determination, which this court will uphold absent an abuse of that discretion. *McFarland v. McFarland*, 2019-Ohio-2673, ¶ 11 (12th Dist.).

{¶ 22} The legislature has, however, established specific circumstances where courts may not find voluntary unemployment or impute income. R.C. 3119.05(I) provides:

> Unless it would be unjust or inappropriate and therefore not in the best interests of the child, a court or agency shall not determine a parent to be voluntarily unemployed or underemployed and shall not impute income to that parent if any of the following conditions exist:
>
> . . .
>
> (2) The parent is approved for social security disability insurance benefits because of a mental or physical disability, or the court or agency determines that the

parent is unable to work based on medical documentation that includes a physician's diagnosis and a physician's opinion regarding the parent's mental or physical disability and inability to work.

Husband's argument rests primarily on this statutory provision.

{¶ 23} We conclude that this provision does not shield him from a finding of voluntary unemployment for two reasons. First, as Wife correctly observes, Husband receives Veterans Administration disability benefits, not Social Security disability insurance benefits. Second, the record lacks the medical documentation that R.C. 3119.05(I)(2) demands—medical evidence establishing Husband's "inability to work." Quite the opposite: the record demonstrates that Husband successfully maintained employment for years after his LQTS diagnosis and, by his own admission, remains capable of working but has simply chosen not to do so. While Husband testified that he was incapable of working, it was within the court's discretion to disbelieve that testimony, and we see no abuse of that discretion. *See Wolford v. Wolford*, 2009-Ohio-5459, ¶ 27 (4th Dist.) (trial court did not abuse its discretion by disbelieving the only actual evidence that appellant was not capable of working—his own self-serving statement that he was incapable of working).

{¶ 24} Wife's vocational expert, Dr. Kenneth Manges, testified that Husband remains employable in either the pharmaceutical industry or lower-stress environments, with potential earnings between $80,000 and $111,000 annually. Dr. Manges specifically stated that he found Husband "overall to be employable," while acknowledging it was not his "role to interpret or to opine about medical conditions." The expert testified that he "found, read, or heard nothing that would prevent Husband from working in the future." The trial court evidently found this testimony persuasive.

{¶ 25} The trial court's finding draws further support from Husband's lifestyle

choices, particularly his engagement in rigorous weightlifting several times weekly. This strenuous physical regimen sits awkwardly alongside his professed inability to maintain employment due to health concerns. As Dr. Manges observed, Husband's intense exercise routine "suggest[s] he is placing himself at risk," yet he apparently considers this risk acceptable while deeming workplace stress intolerable.

{¶ 26} To be sure, Husband relies on the Veterans Administration's finding of 100% disability. But that classification, while relevant, does not conclusively establish an inability to work under Ohio's child support statutes—particularly where, as here, substantial evidence demonstrates continuing employability. This case bears similarity to *Meeks v. Meeks*, 2006-Ohio-642 (10th Dist.), where the Tenth District upheld a trial court's determination that a husband receiving Veterans Administration disability benefits was voluntarily unemployed. As in *Meeks*, the evidence established that despite his disability, Husband retained the skills, experience, and capacity for gainful employment. *See id.* at ¶ 36. Not only that, but Husband worked for years, despite his claim of total disability.

{¶ 27} When viewed against the backdrop of this evidence, the trial court's decision to impute income of $105,000—squarely within the range identified by the vocational expert—reflects a reasonable exercise of discretion, grounded in fact and consonant with law.

{¶ 28} The first assignment of error is overruled.

### B. The failure to award attorney fees

{¶ 29} The second assignment of error alleges:

> THE TRIAL COURT ERRED IN FAILING TO AWARD ATTORNEY FEES TO HUSBAND.

{¶ 30} In his second assignment of error, Husband contends that the trial court

erred in failing to award him attorney fees. We agree with Husband in part.

{¶ 31} The allocation of attorney fees in domestic-relations proceedings rests principally on equitable considerations. R.C. 3105.73(A) permits a court to "award all or part of reasonable attorney's fees . . . if the court finds the award equitable" after considering "the parties' marital assets and income, any award of temporary spousal support, the conduct of the parties, and any other relevant factors." This statutory framework establishes a presumption that each party bears responsibility for their own legal expenses, with the burden on the moving party to demonstrate circumstances warranting deviation from this default rule. *Walpole v. Walpole*, 2013-Ohio-3529, ¶ 33 (8th Dist.).

{¶ 32} Husband's argument, however, raises a more nuanced question. He asserts that the trial court's denial of attorney fees disregarded two prior rulings that had already determined his entitlement to such fees—leaving only the question of amount for trial. This contention requires us to consider not merely the general discretion afforded trial courts under R.C. 3105.73, but the specific procedural posture presented by the record.

{¶ 33} Two distinct magistrate rulings awarded Husband attorney fees. First, in July 2022, the magistrate found Wife in contempt for violating the court's restraining order by removing personal property from the marital residence. Second, in February 2023, the magistrate granted Husband's motion to compel discovery—made under Civ.R. 37—due to Wife's failure to produce documents relating to her Scentsy business. In both instances, the magistrate determined that an award of fees was appropriate but reserved calculation of the amount for the final hearing.

{¶ 34} The February 2023 decision merits particular attention. The trial court never adopted or affirmed the July 2022 order, and Wife's objections to it remained pending at

the final hearing. But the trial court did specifically affirm the February 2023 decision "in all respects" in a May 2023 entry, following Wife's objections. The magistrate's decision granted Husband's motion to compel, and the trial court's affirmation necessarily ratified this ruling after "a full and complete review of the record."

{¶ 35} Civ.R. 37(A)(5)(a) provides:

> If the motion [to compel discovery] is granted, the court shall, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court shall not order this payment if:
>
> > (i) The movant filed the motion before attempting in good faith to obtain the discovery without court action;
> >
> > (ii) The opposing party's response or objection was substantially justified; or
> >
> > (iii) Other circumstances make an award of expenses unjust.

This rule employs mandatory language—the court "shall" require payment of expenses, including attorney fees, when granting a motion to compel, absent one of the three enumerated exceptions. Neither the magistrate nor the trial court identified any such exception. To the contrary, the trial court's entry affirming the magistrate's decision expressly stated that it had "performed an independent review of all issues of fact and law determined by the Magistrate" and found the decision "based on sound reasoning."

{¶ 36} We recognize the well-established principle that a trial court "has ultimate authority and responsibility over the magistrate's findings and rulings, and [can] substitute its judgment for that of the magistrates." *Patridge v. Matthews*, 2001-Ohio-4207, 2001 Ohio App. LEXIS 586, *5 (12th Dist.). We further acknowledge that interlocutory orders generally remain subject to revision until final judgment. Civ.R. 54(B); *Pitts v. Dept. of Transp.*, 67 Ohio St.2d 378, fn. 1 (1981). This principle of revisability, however, does not

- 11 -

operate without boundaries or notice, particularly where mandatory provisions of the Civil Rules are concerned.

{¶ 37} The trial court's affirmation of the magistrate's discovery-sanctions order created a reasonable expectation that the issue of entitlement to attorney fees had been conclusively determined, with only the amount remaining for resolution at trial. Husband presented evidence at the final hearing as to the amount of attorney fees that he had incurred specifically related to the motion to compel. Yet the trial court, without explanation or acknowledgment of its prior ruling, summarily denied all attorney fees.

{¶ 38} Where a motion to compel has been granted under Civ.R. 37, and none of the rule's exceptions have been invoked, the award of reasonable expenses is not discretionary but mandatory. While a trial court retains broad discretion under R.C. 3105.73 to determine whether attorney fees are equitable in the overall context of a divorce action, this discretion does not extend to disregarding the specific mandate of Civ.R. 37 without identifying applicable exceptions or at least providing a reasoned explanation. The trial court's sweeping statement in its January 12, 2024 order that it "declines to grant either party an award of attorney fees" after "reviewing the factors set forth in ORC § 3105.73" fails to acknowledge or address its prior specific ruling on discovery sanctions. This omission reflects more than a mere exercise of discretion; it constitutes a failure to apply the governing legal standard to a discrete category of attorney fees that had already been determined appropriate under Civ.R. 37.

{¶ 39} We think that fundamental fairness requires that when a court reconsiders a prior ruling—particularly one made after deliberate consideration and affirmed "in all respects"—it should provide notice of such reconsideration and articulate its reasons. The absence of such notice or explanation here suggests not a measured exercise of discretion, but rather an oversight regarding the distinct procedural posture of the

discovery sanctions.

**{¶ 40}** As to attorney fees related to Wife's contempt and other litigation conduct, we find no abuse of discretion in the trial court's denial. These determinations remained properly within the court's equitable authority under R.C. 3105.73. However, with respect to the attorney fees specifically incurred in connection with the motion to compel— expenses that fall squarely within Civ.R. 37's mandatory framework—the trial court erred by failing to award reasonable fees without identifying any applicable exception. On remand, the trial court must determine and award reasonable attorney fees to Husband incurred in connection with the motion to compel.

**{¶ 41}** The second assignment of error is sustained in part, limited to the attorney fees related to the motion to compel discovery. In all other respects, the assignment of error is overruled.

### C. The classification of cash

**{¶ 42}** The third assignment of error alleges:

> THE TRIAL COURT ERRED IN CREDITING WIFE ONE-HALF THE VALUE OF HUSBAND'S SEPARATE PROPERTY IN THE OVERALL PROPERTY DIVISION.

**{¶ 43}** Husband's third assignment of error concerns $9,500 in cash that he claims was his separate property but which the trial court treated as marital property subject to division. The dispute centers on funds removed by Wife from an ammunition box in the marital residence during the pendency of divorce proceedings.

**{¶ 44}** In divorce proceedings, the party seeking to establish an asset as separate property bears the burden of proof by a preponderance of the evidence. *Casper v. Casper*, 2013-Ohio-4329, ¶ 16 (12th Dist.). This requires more than mere assertion; it demands that the party trace the asset to its separate origin through competent, credible evidence. *Id.*

{¶ 45} Our review of a trial court's classification of property as marital or separate is conducted under a manifest-weight-of-the-evidence standard. *Oliver v. Oliver*, 2011-Ohio-6345, ¶ 8 (12th Dist.). This standard requires us to consider whether "the greater amount of credible evidence, offered in a trial, supports one side of the issue rather than the other." *Ohmer v. Renn-Ohmer*, 2013-Ohio-330, ¶ 36 (12th Dist.), quoting *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 12. In our review, we are mindful that the trial court, as the finder of fact, occupies the superior position to assess credibility and weigh evidence.

{¶ 46} It is undisputed that Wife removed $14,500 in cash from an ammunition box in the marital residence during divorce proceedings. Husband contended that $9,500 of those funds represented a gift from a friend to assist with Husband's legal expenses. And the friend testified to this effect at a hearing on the matter before the magistrate. The magistrate ordered in July 2022 that the cash be put back, without explicitly characterizing the funds as either separate or marital property. Importantly, the magistrate emphasized the temporary nature of this order, noting it was "not [a] final determination[] as to marital versus separate property." The trial court noted that subsequently, $2,500 was distributed to each party.

{¶ 47} When the parties established their stipulated list of disputed matters for the final hearing, it did not include this cash. When Husband's counsel raised this omission during testimony, Wife's counsel maintained that the issue remained reserved for the court's determination. The trial court permitted questioning on the matter, though Husband had not recalled his friend to testify regarding the alleged gift. Wife acknowledged remembering the friend's earlier testimony and conceded her understanding that if the money came from the friend—whether as loan or gift—it would legally belong to Husband.

{¶ 48} Despite this testimony, the trial court concluded that Husband failed to

satisfy his burden of proof, finding that his "claims of separate interest are not supported by the evidence and entirely lack sufficient tracing of a quantifiable separate interest." The court found that the $9,500 was marital property and allocated it to Husband, subject to offset in the property division.

{¶ 49} As an initial matter, we reiterate that the trial court was not bound by any earlier implicit characterization of the property in the magistrate's pre-decree order. As we discussed earlier in this opinion, a trial court may substitute its judgment for that of the magistrate, and interlocutory orders in divorce proceedings are by their nature provisional until the final decree. Husband should have known that the classification of the cash had not been finally determined.

{¶ 50} While Wife's equivocal testimony acknowledged the possibility of the funds originating with Husband's friend, this acknowledgment falls short of establishing separate property by a preponderance of the evidence. Husband's failure to present his friend to testify again at the final hearing—or to introduce documentary evidence tracing the funds—left a critical evidentiary gap. The trial court, confronted with this deficiency, reasonably concluded that Husband failed to meet his burden.

{¶ 51} Reviewing the record in its entirety, we cannot conclude that the trial court's determination runs counter to the manifest weight of the evidence. The determination that Husband failed to establish the separate nature of these funds finds support in the record. Where the evidence permits multiple interpretations, we defer to the factfinder's reasoned judgment.

{¶ 52} The third assignment of error is overruled.

### D. The valuation of Wife's business

{¶ 53} The fourth assignment of error alleges:

THE TRIAL COURT ERRED IN DETERMINING THE VALUE

OF WIFE'S BUSINESS.

{¶ 54} Husband's fourth assignment of error challenges the trial court's acceptance of Wife's expert valuation of her Scentsy business at $26,000 rather than his expert's assessment of $352,000. At bottom, this argument invites us to substitute our judgment for the trial court's on a quintessentially fact-intensive question. We decline that invitation.

{¶ 55} The governing legal principles are straightforward. Before crafting an equitable division of marital property, a court must first determine the value of the assets before it. *Donovan v. Donovan*, 110 Ohio App.3d 615, 620-621 (12th Dist. 1996). This valuation process resists mechanical formulas, for "equity depends on the totality of the circumstances." *Baker v. Baker*, 83 Ohio App.3d 700, 702 (9th Dist. 1992), citing *Briganti v. Briganti*, 9 Ohio St.3d 220, 221-222 (1984). What matters is that the trial court's chosen valuation finds support in competent, credible evidence. *Moore v. Moore*, 2007-Ohio-4355, ¶ 45 (12th Dist.).

{¶ 56} When confronted with competing expert valuations, trial courts possess considerable discretion to adopt the valuation they find most persuasive. *Id.* Indeed, a trial court's discretion extends further still: when presented with expert testimony, the court may accept all of it, none of it, or carefully extract the credible portions from the less persuasive. *Phillips v. Phillips*, 1993 Ohio App. LEXIS 3953 (12th Dist. Aug. 16, 1993). What constrains a trial court is not the array of values offered by experts, but rather the fundamental requirement that its ultimate determination be anchored in competent, credible evidence. *Donohoo v. Donohoo*, 2012-Ohio-4105, ¶ 55 (12th Dist.).

{¶ 57} Applying these principles, we find no abuse of discretion in the trial court's valuation of Wife's Scentsy business. The record reveals that the court conducted a thorough examination of competing expert methodologies. Wife's expert, Alan Duvall, employed a market approach, arriving at a $26,000 valuation. Husband's expert,

Rebekah Smith, used a capitalized cash flow method to reach $352,000. The stark divergence between these figures underscores the inherent complexity of valuing this particular asset.

**{¶ 58}** Duvall grounded his analysis in Scentsy's distinctive business structure—specifically, the company's reservation of "all legal right to approve or deny" a consultant's transfer of business. After interviewing a Scentsy executive, Duvall concluded that Wife faced severe constraints in selling her business, making it "very difficult" to transfer and "almost impossible" to determine a reliable sales price given the paucity of company-approved transactions. Based on available market evidence, he valued the business at $26,000.

**{¶ 59}** Smith, by contrast, applied an income approach, essentially capitalizing Wife's future earning potential. She calculated a value of $440,000, then applied a 20% discount for lack of marketability due to transfer restrictions, arriving at $352,000. While Smith had reviewed the Scentsy contract, she notably had not interviewed anyone from Scentsy about its transfer policies.

**{¶ 60}** The central valuation question here implicates a fundamental distinction in business valuation: when does a business represent transferable value, and when does it merely reflect the owner's personal-earning capacity? The trial court recognized the significance of this distinction.

**{¶ 61}** In businesses with severely restricted transferability, where income generation depends predominantly on the owner's continued personal participation, valuation becomes particularly nuanced. As the trial court observed, such circumstances more closely resemble imputing income (as with employment) than valuing a genuinely transferable asset. Wife's Scentsy business presented precisely such a case—its value derived primarily from her personal relationships with customers and her direct coaching

of downline team members. Without her continued involvement, both direct sales and team commissions would likely diminish substantially.

{¶ 62} The trial court found Duvall's testimony more persuasive, specifically citing Scentsy's unusual business structure and its stringent control over consultants' businesses, which made Smith's capitalized cash flow method "too speculative." The court was particularly persuaded by evidence of Scentsy's significant restrictions on transferring a director's downline base—prospective buyers must relinquish their own downline base before acquiring another's. This restriction severely constrains marketability, as evidenced by the fact that only about ten transfers of director downline bases have occurred since the company's inception. Such a constraint creates a powerful disincentive for potential purchasers, a reality the court reasonably factored into its analysis.

{¶ 63} Husband argues that Smith's income-capitalization approach offered greater reliability given insufficient data about prior sales. But this argument misses the forest for the trees. Duvall persuasively testified that the limited number of sales and their modest values confirmed his assessment that Wife's business interest had minimal transferable value. In Scentsy's 14-year history, only about ten transfers of director downline bases had occurred. Recent transactions reflected values dramatically lower than Smith's assessment—with sales averaging just $8,000 over the past eight years, and the most recent transaction commanding a mere $3,000. These market realities provided substantial factual foundation for the court's acceptance of Duvall's more conservative valuation.

{¶ 64} In matters of business valuation, reasonable minds may differ on methodology. Our role is not to reweigh evidence or substitute our judgment for the trial court's assessment of expert credibility. Having carefully examined the record, we find

the trial court's determination was supported by competent, credible evidence and fell well within its considerable discretion.

{¶ 65} The fourth assignment of error is overruled.

### E. The failure to divide the silver coins and collectibles

{¶ 66} Wife's cross-assignment of error alleges:

THE TRIAL COURT ERRED WHEN IT FAILED TO VALUE AND DIVIDE THE PARTIES' SILVER COINS AND OTHER COLLECTIBLE COINS.

{¶ 67} In her cross-assignment of error, Wife contends that the trial court erred by failing to classify and divide the parties' silver coins and collectibles (collectively, "silver"). Wife's contention has merit.

{¶ 68} Ohio law prescribes a clear two-step process that trial courts must follow in divorce proceedings to divide the parties' property. *Oliver v. Oliver*, 2011-Ohio-6345, ¶ 6 (12th Dist.). First, the court must classify the property, that is, "determine what constitutes marital property and what constitutes separate property." R.C. 3105.171(B). Second, "upon making such a determination," the court must divide both marital and separate property equitably between the spouses. *Id.*

{¶ 69} "A trial court has broad discretion in making divisions of property in domestic cases." *Middendorf v. Middendorf*, 82 Ohio St.3d 397, 401, 1998-Ohio-403, citing *Berish v. Berish*, 69 Ohio St.2d 318 (1982). But "courts lack the discretion to make errors of law, particularly when the trial court's decision goes against the plain language of a statute or rule." *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 39. We review legal errors de novo.

{¶ 70} The record before us reveals that the "[d]ivision, if any, of silver, and coins given to Husband" was explicitly listed as a disputed issue in the joint trial stipulations presented to the court before trial. Thus, both Husband and Wife clearly sought a determination of whether the silver constituted marital or separate property and asked for

its explicit inclusion in the court's equitable property division. The trial court, however, did not mention the silver at all in its divorce decree.

{¶ 71} Husband argues that Wife's assignment of error regarding the silver "should be deemed waived" because she presented no evidence of its value and because Wife acknowledged some of the silver was "premarital" and "gifted to him by his grandparents." This argument relies primarily on *Roberts v. Roberts*, 2008-Ohio-6121 (10th Dist.), which held that when property value is disputed but a party fails to present evidence of valuation, "it is akin to an invited error and that party has waived the right to appeal in regard to that asset." *Id.* at ¶ 21.

{¶ 72} We find *Roberts* distinguishable and inapposite. *Roberts* addressed valuation in the division step, not classification. In *Roberts*, the trial court had already classified the property as marital; the dispute concerned only its subsequent valuation. *Roberts* stands for the reasonable proposition that parties must provide evidence to support their preferred valuation, not that failure to provide such evidence excuses the court from its statutory duty to classify property in the first instance. The court observed that when parties dispute property value but submit no evidence of that value, the valuation typically falls within the trial court's discretion. *Id.* at ¶ 18.

{¶ 73} We addressed similar principles in *Corwin v. Corwin*, 2013-Ohio-3996, ¶ 38 (12th Dist.), where we emphasized that R.C. 3105.171 "governs the equitable division of marital property in an action for divorce." In dividing marital property, trial courts must "'divide the marital property equally, unless the court finds an equal division would be inequitable.'" *Id.*, quoting *Grow v. Grow*, 2012-Ohio-1680, ¶ 12 (12th Dist.), and R.C. 3105.171(C)(1). Critically, "'[i]n making these findings, the trial court must assign a value to all of the marital property,'" and "'must place a monetary value on every contested asset of the parties in a divorce proceeding.'" *Id.* at ¶ 39, quoting *O'Rourke v. O'Rourke*, 2010-

Ohio-1243, ¶ 16 (4th Dist.), citing R.C. 3105.171(B).

{¶ 74} The record before us demonstrates that Husband possessed a collection of silver coins and other collectibles. Wife testified that Husband had "a bunch of coins that he's purchased while we've been married" as well as "a few that are high-dollar value coins" and "a bunch of silver rounds." And Husband's own testimony confirmed the silver's existence and the need for its disposition. He stated that he believed the silver "was already resolved" and expressed his preference that each party keep what they currently possessed. Husband even contemplated the possibility of inequitable division "based on value," suggesting the silver had non-trivial worth. While the parties' stipulations specifically differentiated the silver from household goods—indicating their shared understanding that these items required separate consideration—the trial court's divorce decree makes no mention of them.

{¶ 75} This oversight cannot be squared with R.C. 3105.171(B)'s unambiguous mandate that in divorce proceedings, the court "shall determine what constitutes marital property and what constitutes separate property" and "shall divide the marital and separate property equitably between the spouses." As we have held, a trial court errs when it fails to distribute all marital property. *Goffinet v. Goffinet*, 1996 Ohio App. LEXIS 149, *3 (12th Dist. Jan. 22, 1996) ("A divorce decree which does not dispose of all the property involved in a settlement between the parties is insufficient and incomplete."). Such failure constitutes reversible error. *See Keene v. Keene*, 2012-Ohio-5213, ¶ 32 (2d Dist.).

{¶ 76} On remand, the trial court must determine whether the silver constitutes marital or separate property. And while neither party submitted evidence of the silver's value, the trial court retains broad discretion in how it values the silver and whether it requires additional evidence to support that valuation.

{¶ 77} Wife's cross-assignment of error is sustained.

### III. Conclusion

{¶ 78} We have overruled the first, third, and fourth assignments of error. And we have sustained the second assignment of error in part and sustained the cross-assignment of error. The trial court's judgment, therefore, is reversed in part, and this case is remanded for the limited purposes of (1) determining and awarding Husband reasonable attorney fees incurred in connection with his motion to compel discovery, and (2) classifying the silver as marital or separate property and dividing it equitably. In all other respects, the trial court's judgment is affirmed.

HENDRICKSON, P.J., and BYRNE, J., concur.