[Cite as *Egan v. Egan*, 2025-Ohio-1493.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


| | | |
|---|---|---|
| SHELLY L. EGAN NKA WESSELS, | : | |
| Appellee, | : | CASE NO. CA2024-08-102 |
| | : | O P I N I O N |
| - vs - | | 4/28/2025 |
| | : | |
| SEAN T. EGAN, | : | |
| Appellant. | : | |


CIVIL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. DR17-11-1002


Shelly L. Egan nka Wessels, pro se.

J. Stephen Cox, for appellant.


**HENDRICKSON, P.J.**

{¶ 1} Appellant, Sean T. Egan ("Husband"), appeals the decision of the Butler County Court of Common Pleas, Domestic Relations Division, modifying the magistrate's decision and holding that Husband was entitled to a smaller reduction to his spousal support obligation. For the reasons discussed below, we affirm.

## I. Factual and Procedural Background

**{¶ 2}** Husband and Shelly L. Egan ("Wife") were divorced pursuant to a decree of divorce journalized on June 18, 2018. The decree approved and adopted the parties' separation agreement journalized on the same day. As pertinent to this appeal, the parties stipulated that, for spousal support purposes, Husband's annual income was $293,000 and Wife was imputed annual income of $16,800. The decree and separation agreement provided that Husband pay Wife spousal support of $6,500/month for 71 months, commencing July 15, 2018. The trial court retained jurisdiction to modify the amount of spousal support based upon a substantial change in circumstances. However, the decree and separation agreement excluded "a significant reduction in Husband's income" as a "substantial change of circumstances" unless the reduction was "involuntary" and "not the result of Husband's actions or inactions." Finally, the decree and separation agreement required that Husband name Wife as beneficiary "of his current life insurance policy with a death benefit of $250,000 … until the expiration of the spousal support obligation."

**{¶ 3}** For 25 years, Husband worked at Mike Castrucci Ford Sales, Inc. in Milford, Ohio, serving the Cincinnati metro-area, beginning as a salesman and eventually rising to become sales manager, but on March 6, 2023, he was terminated. On April 21, 2023, Husband filed a motion to modify his spousal support obligation based upon the loss of his employment. On August 2, 2023, Wife filed a motion for Husband to be held in contempt for nonpayment of spousal support and termination of the life insurance policy designating Wife as beneficiary. Wife's contempt motion also sought an award of attorney fees.

**{¶ 4}** The motions came for hearing before a magistrate on September 25, 2023. The evidence revealed that Husband had remarried and had moved to Lexington, Kentucky some years prior to the filing of his motion, where he lived with his current wife.

Husband continued to work at Castrucci after he moved to Lexington by commuting or staying at an apartment he had leased in Milford. Husband's former employer, Mike Castrucci, testified that Husband was not terminated for cause but because of poor sales performance during the last part of Husband's employment as sales manager. Mr. Castrucci attributed the drop in sales to the COVID-19 pandemic and a shortage of electronic chips, but also to a "gut feel" that Husband bore responsibility; Mr. Castrucci testified that sales rebounded after Husband's departure. Husband applied for unemployment compensation, Castrucci did not oppose Husband's application, and it was approved. At about the same time Husband was terminated by Castrucci, the lease on his Milford apartment also terminated.

{¶ 5} After his termination, Husband decided he would work closer to home in Lexington. Lexington is a less lucrative vehicle sales market than Cincinnati and Husband could not expect to earn in Lexington the same amount he did in Cincinnati. Nonetheless, Husband did not seek employment in the Cincinnati market. Husband applied for four open positions in Lexington and was hired by Gates Ford-Lincoln earning an annual base salary of $10,000/month plus commissions.

{¶ 6} Because Husband's employment at Castrucci had terminated, there was a small spousal support payroll deduction for April 2023 (which was refunded to Husband) and no spousal support payroll deduction in May 2023. Husband did not personally pay the court-ordered spousal support for April and May 2023. Payroll deductions of spousal support recommenced in June 2023 when Husband started his new employment. As a further result of the termination of Husband's employment by Castrucci, he also lost the employer-provided life insurance for which Wife was the beneficiary.

{¶ 7} By Magistrate's decision of October 4, 2023, the magistrate granted Husband's motion to modify spousal support and Wife's contempt motion. The magistrate

determined that Husband's termination of employment with Castrucci was neither voluntary, based upon any action or inaction by Husband, nor for cause. The magistrate held that Husband sustained a significant reduction in income, constituting a substantial change of circumstances which supported a modification of spousal support. The magistrate also observed that Wife's annual income had increased to $55,000/year. Based upon the original spousal support award being 28.24% of the parties disparity in income (i.e., $293,000/year versus $16,800/year), the magistrate applied the same factor to the current disparity in income (i.e. $198,000/year versus $55,000/year) and recommended that Husband's spousal support be reduced to $3,365.27, effective April 21, 2023. The magistrate also found Husband in contempt for failing to pay spousal support and maintain life insurance as ordered. The magistrate ordered that Husband pay $500 for Wife's attorney's fees, with payment to be made directly to Wife's counsel no later than November 1, 2023.

{¶ 8} On October 18, 2023, Wife filed objections to the October 4, 2023 magistrate's decision. Pursuant to her December 12, 2023 brief upon her objections, Wife asserted: (1) the trial court lacked jurisdiction to modify spousal support as the reduction of Husband's income was not involuntary and otherwise the result of Husband's actions or inactions; and (2) even if the trial court had jurisdiction to modify spousal support, the evidence before the magistrate indicated Husband's income increased in the years since the original spousal support award (Husband earned $546,522.50 in eleven months preceding his termination by Castrucci, which is substantially more income than the $293,000 annual income spousal support was originally based upon). Wife also sought $12,400 in attorney fees. Husband did not file any brief in response.

{¶ 9} By Decision and Order of July 19, 2024, the trial court sustained Wife's objection in part by reducing Husband's spousal support obligation in a lesser amount

than that ordered by the magistrate. The trial court, mentioning a variety of factors, held that Husband "failed to meet his burden that he is not voluntarily underemployed due to his inaction . . . ." The trial court found that Husband's termination from Castrucci was "quiet quitting", citing the suspicious coincidence of the termination of Husband's employment and the lease of his Milford apartment. The trial court emphasized that the Lexington vehicle sales market is less lucrative than Cincinnati's, that Husband could not expect to earn the same income in Lexington as he had in Cincinnati, and contrary to the magistrate's finding, the evidence was unequivocal that Husband did not apply for any jobs in the Cincinnati area but "voluntarily limited his employment search to the Lexington/Richmond market." However, the trial court found that there was a change in circumstances based upon the increase in Wife's income to $55,000. Using the same 28.4% disparity in income factor between $293,000 and $55,000, the trial court reduced Husband's spousal support obligation to $5,600.93/month.

{¶ 10} The trial court also modified the magistrate's attorney fee recommendation, finding Wife had $2,230 in attorney fees directly related to the contempt motions granted by the magistrate, and ordered "The $2,230 shall be liquidated as spousal support arrears."

{¶ 11} Husband timely appealed, raising two assignments of error for our review.

**II. Legal Analysis**

{¶ 12} Assignment of Error No. 1:

THE JUDGE ERRED IN OVERTURNING THE MAGISTRATE'S DECISION BY HOLDING THAT DEFENDANT DID NOT MEET HIS BURDEN PROOF THAT HE WAS ENTITLED TO A DECREASE IN HIS SPOUSAL SUPPORT OBLIGATION UNDER THE TERMS OF THE SEPARATION AGREEMENT BASED ON A SPECULATIVE ARGUMENT THAT HIS LOSING HIS EMPLOYMENT WAS SUSPICIOUSLY "QUIET QUITTING" AND ACCEPTANCE OF ANY EMPLOYMENT THAT WAS NOT WITHIN THE

GREATER CINCINNATI AREA AFTER HIS TERMINATION
EQUATED TO A VOLUNTARY REDUCTION IN INCOME ON
HIS PART.

{¶ 13} In his first assignment of error, Husband argues the trial court erred in modifying the magistrate's decision and ordering a smaller reduction in his spousal support obligation. Husband asserts that the evidence and testimony established he lost his employment at Castrucci Ford through no action or inaction on his part, and this loss of employment constitutes a substantial change of circumstances to support the larger reduction in spousal support initially ordered by the magistrate.

{¶ 14} A trial court has broad discretion in determining a spousal support award, including whether or not to modify an existing award. *Cox v. Cox*, 2017-Ohio-1010, ¶ 9 (12th Dist.). Thus, a spousal support award will not be disturbed on appeal absent an abuse of discretion. *Id.* An abuse of discretion implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). "The party seeking to modify a spousal support obligation bears the burden of showing that the modification is warranted." *Donlon v. Lineback*, 2016-Ohio-7739, ¶ 10 (12th Dist.).

{¶ 15} R.C. 3105.18(C)(1)(b) directs courts to consider the "earning abilities" of the parties as opposed to their actual earnings in considering an award of spousal support. *Spillane v. Spillane*, 12th Dist. No. CA2019-12-206, 2020-Ohio-5052, ¶ 17. Accordingly, a trial court may impute income to a party who is voluntarily unemployed, voluntarily underemployed, or otherwise not working up to his or her full earning potential. *Moore v. Moore*, 2007-Ohio-4355, ¶ 19 (12th Dist.). Whether a party is voluntarily underemployed and the amount of income that should be imputed, if any, are factual determinations to be made by the trial court based on the particular circumstances of each case. *Spillane*, at ¶ 18. Absent an abuse of discretion, the trial court's determination on these issues will not

be disturbed on appeal. *Id.*

{¶ 16} According to R.C. 3105.18(E), a trial court can modify spousal support if the court determines that the circumstances of either party have changed and the parties' divorce decree contained a provision specifically authorizing the court to modify the spousal support order. R.C. 3105.18(F)(1) provides that "a change in the circumstances of a party includes, but is not limited to, any increase or involuntary decrease in the party's wages, salary, bonuses, living expenses, or medical expenses, or other changed circumstances . . . ." The statute further requires that the change in circumstances is "substantial and makes the existing award no longer reasonable and appropriate." R.C. 3105.18(F)(1)(a). The change in circumstances must not have been "taken into account by the parties or the court as a basis for the existing award when it was established or last modified, whether or not the change in circumstances was foreseeable." *Id.*

{¶ 17} Here, the parties' separation agreement contains a provision authorizing the trial court to modify the amount of spousal support based upon a substantial change in circumstances. The separation agreement identified a "significant reduction in Husband's income" as a substantial change in circumstances so long as the reduction was "involuntary" and "not the result of Husband's actions or inactions."

{¶ 18} The trial court's decision to modify the Magistrate's order was based upon two main findings. First, that Husband's separation from employment by Castrucci was not involuntary, but an instance of "quiet quitting." Second, that Husband voluntarily reduced his income by failing to seek employment in the more lucrative Cincinnati vehicle market where he could have commanded a higher income.

{¶ 19} The trial court did not abuse its discretion when it rejected the magistrate's assessment of the evidence and found Husband failed to prove his termination was involuntary. At the September 25, 2023 hearing, Mr. Castrucci testified that Husband was

not terminated for a specific reason, and Husband testified that he would have continued commuting to the Cincinnati area. If Husband's evidence is accepted at face value, it supports his claim that the reduction in his income was not voluntary or due to his actions or inactions. However, the trial court did not accept that evidence at face value and discounted the veracity of Husband's and Mr. Castrucci's testimony concerning the circumstances of Husband's termination of employment.

{¶ 20} Even though Mr. Castrucci testified that Husband was not terminated for a specific reason, his testimony still indicated that he held Husband responsible for the slump in sales, regardless of characterizing this assessment as only a "gut feel." Mr. Castrucci testified ". . . I saw things that even though by and large, we were still doing a very good job, and in 2022, we were the number one store, I just felt that we were missing sales, and so I made up my mind that I was going to see if my gut was right, and I went ahead and let Sean go. I felt that change was necessary." After Husband was replaced, sales increased. Further, the trial court was concerned about the coincidence of the termination of Husband's employment and the expiration of the lease on his Milford apartment. Based on this evidence, the trial court was suspicious that Husband was "quiet quitting" by putting less effort into his job at Castrucci and that Husband anticipated being terminated.

{¶ 21} Husband argues that because the magistrate presided at the September 25, 2023 hearing, he was in the best position to assess the witnesses' credibility, therefore the trial judge should have deferred to the magistrate's assessment of the testimony. That is contrary to Civ.R. 53(D)(4)(d) which requires a trial court to "undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law." When conducting its de novo review, the trial court may not defer to the magistrate because the magistrate is a subordinate

officer of the trial court, not an independent officer performing a separate function. *Leach v. Leach*, 2020-Ohio-1181, ¶ 11 (12th Dist.); *See also Hart v. Spenceley*, 2013-Ohio-653, ¶ 16 (12th Dist.) (affirming the trial court's decision in which it did not defer to the magistrate's credibility and factual determinations and instead performed a de novo review). The trial court has the ultimate authority and responsibility over the magistrate's findings and rulings. *Mandzak v. Graves*, 12th Dist. Butler No. CA2009-06-173, 2010-Ohio-595, ¶ 7.

{¶ 22} Husband bore the burden of proving his termination was involuntary. Because the trial court did not believe the testimony on the issue and was skeptical, Husband failed to satisfy his burden.

{¶ 23} As to the second issue, the evidence was unequivocal that Husband did not seek employment in the Cincinnati market, where he had continued to work for years despite residing in Lexington. Husband argues that the trial court erred in relying upon this factor because there was no evidence presented whether employment was available to him in the Cincinnati market comparable to that which he had with Castrucci. However, because Husband bore the burden of showing that the modification of spousal support was warranted, this lack of evidence is construed against him. It was Husband's responsibility to prove no higher-paying jobs were available in Cincinnati.

{¶ 24} If Husband had applied for jobs in the Cincinnati market without success or without finding a job in the Cincinnati market with a comparable salary, his argument would be more persuasive. However, even though Husband testified that he was willing to commute to Cincinnati for a higher-paying job, Husband admitted that he never applied to any jobs there. Husband is free to work closer to his home in Lexington, albeit at a lesser salary, but the practicalities of his choice to do so may not serve as a basis to reduce his spousal support obligation. Husband had been residing in Lexington for

several years and commuting or residing in his Milford apartment to continue his employment with Castrucci. Expecting him to apply for Cincinnati market jobs is consistent with what Husband had been doing and is not unreasonable under the circumstances. By limiting his job search to a lower paying job market, Husband voluntarily reduced his income.

{¶ 25} Based on this evidence, the trial court did not abuse its discretion when it found that Husband failed to meet his burden of proof and modified the magistrate's decision.

{¶ 26} Husband's first assignment of error is overruled.

{¶ 27} Assignment of Error No. 2:

> THE JUDGE ERRED IN RULING THAT DEFENDANT OWED A TOTAL OF $2,230.00 IN ATTORNEYS' FEES DIRECTLY RELATED TO THE CONTEMPT MOTION GRANTED IN THE MAGISTRATE'S ORIGINAL DECISION, WHEN DEFENDANT HAD ALREADY PAID FIVE HUNDRED ($500.00) DOLLARS PREVIOUSLY ORDERED IN THE MAGISTRATE'S DECISION DIRECTLY TO APPELLEE'S COUNSEL BEFORE THE NOVEMBER 1, 2023 DUE DATE.

{¶ 28} In his second assignment of error, Husband argues that the trial court failed to credit him for $500 in attorney fees he already paid to Wife when it modified the award of attorney fees to $2,230.

{¶ 29} Initially, the magistrate found Husband in contempt for his failure to pay spousal support and to maintain life insurance as ordered, therefore the magistrate ordered Husband to pay $500 in attorney fees directly to Wife's counsel no later than November 1, 2023. In Wife's Brief Upon Objection to the Magistrate's Decision, she requested that Husband pay all attorney fees through the September 25, 2023 hearing, totaling $12,400. Husband did not file any response to Wife's brief and filed nothing to demonstrate that he had already made any payments for Wife's attorney fees. The trial

court found that Wife only had $2,230 in attorney fees directly related to the contempt motions granted by the magistrate. Therefore, the trial court ordered Husband pay $2,230 (and not $12,400) for Wife's attorney fees, to be liquidated as spousal support arrears. The trial court did not discuss the original $500 payment that was due directly to Wife's counsel.

{¶ 30} As proof of the $500 payment, Husband has attached to his appeal brief a copy of the bank receipt and the cashier's check, dated October 20, 2023. However, this attachment does not appear in the trial court record, therefore we are unable to consider it on appeal. As there is no evidence in the record of this payment, this court is unable to determine whether Husband is entitled to such a credit.

{¶ 31} Husband's second assignment of error is overruled.

### III. Conclusion

{¶ 32} We find that the trial court did not err in modifying the magistrate's decision.

{¶ 33} Judgment affirmed.

PIPER and M. POWELL, JJ., concur.