[Cite as *Packer v. Packer*, 2026-Ohio-1417.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

| | | |
|---|---|---|
| KENYATA PACKER, | : | |
| Appellee, | : | CASE NO. CA2025-04-034 |
| vs. | : | OPINION AND JUDGMENT ENTRY 4/20/2026 |
| CHRIS PACKER, | : | |
| Appellant. | : | |
| | : | |

APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. 2021 DRB 00890

Causey Law, LLC, and Sierra D. Causey, for appellee.

King, Koligian & Associates, LLC, and Stephen R. King, for appellant.

## **O P I N I O N**

**BYRNE, J.**

{¶ 1} Appellant, Chris Packer ("Husband"), appeals from the final decree of divorce issued by the Clermont County Court of Common Pleas, Domestic Relations Division, which ended his marriage to appellee, Kenyata Packer ("Wife"). Husband

contests the parts of the divorce decree that involve the court's property division and spousal support awards. For the reasons outlined below, and finding no merit to Husband's appeal, we affirm the domestic relations court's judgment.

## I. Facts and Procedural History

{¶ 2} Husband and Wife were married on August 23, 1994. After nearly 28 years of marriage, Wife filed for divorce from Husband on July 19, 2021. Shortly thereafter, on August 3, 2021, Husband responded with an answer and counterclaim for divorce from Wife. Husband and Wife have no minor children. Husband is employed full-time by Rod-Techs, Inc., a commercial construction company and certified minority-owned business, in which he owns a 75% interest. Wife is employed part-time by Classy Image Salon, LLC, a beauty salon, in which she owns a 100% interest. She also volunteers part-time as an assistant minister. There is no dispute that Husband's ownership interest in Rod-Techs was a marital asset that the domestic relations court was required to value for property division purposes as part of his and Wife's divorce.

{¶ 3} On November 2, 2021, the domestic relations court issued a temporary spousal support order requiring Husband to pay Wife $2,250 per month, effective August 1, 2021. Several months later, on April 19, 2022, Wife filed a motion requesting that the court increase its temporary spousal support order, thereby requiring Husband to pay her an additional unspecified amount of monthly support. To support her motion, Wife argued that an increase was necessary because she feared Husband, whom she claimed was living on $8,000 to $10,000 per month, was "hiding and depleting marital funds" to avoid a proper accounting of their shared marital assets.

{¶ 4} On July 27, 2022, the domestic relations court held a hearing on Wife's motion to modify its temporary spousal support order. The court denied Wife's motion in an order filed four days later, on August 1, 2022. In doing so, the domestic relations court

noted that, before issuing its temporary spousal support order, it had thoroughly reviewed and considered the parties' income and earning abilities, neither of which had experienced any significant change since that order was issued on November 2, 2021.

{¶ 5} The domestic relations court also noted that, as part of these proceedings, both Husband and Wife had filed several discovery motions with the court, and Wife argued that she had not been provided with "sufficient documentation" to accurately determine the full scope of Husband's income resulting from his various business interests. This included Husband's ownership interest in Rod-Techs. The court further noted that it had cautioned both parties to comply with all discovery orders issued in the case and that, if, following a final divorce hearing, it found that either party's income had been misrepresented to the court, it retained jurisdiction to retroactively modify its temporary spousal support order.

{¶ 6} Husband retained an expert witness, Harold Kremer ("Husband's Expert"). On September 23, 2022, the domestic relations court issued a pretrial and discovery order requiring Husband to inform the court of the date by which Husband's Expert would complete his valuation of Husband's various business interests. This included Husband's ownership interest in Rod-Techs. Husband responded to the court's inquiry on October 8, 2022, notifying the court that Husband's Expert's valuation of Rod-Techs would be finished on or before November 18, 2022.

{¶ 7} On October 19, 2022, Wife filed another motion asking the domestic relations court to increase the amount Husband was required to pay her under its temporary spousal support order. To support her motion, Wife asserted that Husband had engaged in financial misconduct and reckless, irresponsible spending of their shared marital assets to undermine the claims that she had made against him in their divorce. The domestic relations court denied Wife's motion on December 30, 2022. In doing so,

the court found that the previously imposed temporary spousal support order, which required Husband to pay Wife $2,250 per month, was "substantially sufficient" to balance the parties' incomes. The court also determined that, "at least for the purpose of a temporary spousal support order," this amount was both reasonable and equitable.

{¶ 8} On January 17, 2023, the domestic relations court issued a pretrial order noting that Husband had provided Wife with a copy of a report drafted by Husband's Expert valuing Husband's ownership interest in Rod-Techs. However, the record is unclear about which report the court was referring to: (1) the report that Husband's Expert had drafted valuing Husband's ownership interest in Rod-Techs at $480,000 as of December 31, 2021, or (2) the report that Husband's Expert had drafted valuing Husband's ownership interest at $210,000 as of December 31, 2022. Despite this lack of clarity, the court's pretrial order instructed Wife to review the report and decide whether she accepted its valuation of Husband's ownership interest. If she did not, she was to hire her own expert witness to prepare a report with an independent valuation of that ownership interest. The record shows that Wife retained W. Bernard Kyles ("Wife's Expert") as her expert.

{¶ 9} On April 23, 24, and 25, 2024, a three-day final divorce hearing took place before the domestic relations court. The issues contested at that hearing included the court's decisions on spousal support and property division. The contested issues also involved the proper valuation date and the corresponding value of Husband's ownership interest in Rod-Techs. To address these matters, the court heard testimony from eight witnesses, including Husband, Husband's Expert, Wife, and Wife's Expert.

{¶ 10} As part of this testimony, Wife's Expert testified that, based on the information Husband provided to Wife during discovery, along with Wife's Expert's education and extensive experience in the accounting industry, he could not offer an

opinion on the value of Husband's ownership in Rod-Techs due to the disorganized and incomplete state of Rod-Techs' records. However, Wife's Expert did review the report drafted by Husband's Expert, which valued Husband's ownership interest at $480,000 as of December 31, 2021. When asked about his opinion of Husband's Expert's valuation, Wife's Expert stated that he "can't argue" with it, that he agreed with it, and that it was "reasonable" based on his review of "the old tax returns" available to him. He also agreed with the "discount" that Husband's Expert included in the valuation, considering Rod-Techs' status as a small, "nonmarketable business" not traded on any stock exchange.

{¶ 11} Husband's Expert also testified about the report that he had drafted valuing Husband's ownership interest in Rod-Techs at $480,000 as of December 31, 2021. During his testimony, Husband's Expert explained that the report was just a "draft" he had presented to Husband in "draft" form because he was "not ready to express an opinion on a valuation [of Rod-Techs] as of that date." However, when asked what was incomplete about the report, Husband's Expert stated he could not recall "what was left to do or, or whatever." He simply said, "It, I just wasn't, I wasn't done. So, I did not issue a, a final report at that time." Later, when asked if he had ever revisited and finalized the report, Husband's Expert answered, "No." He explained that this was because Husband never asked him to "finish and conclude" the report. Instead, Husband directed him to draft a new report valuing his ownership interest in Rod-Techs as of a different date, December 31, 2022, which valued the company at $210,000.

{¶ 12} On November 4, 2024, the domestic relations court issued its decision on the disputed issues outlined above. As part of that decision, the court found that Wife's Expert's testimony describing Rod-Techs' records as "incomplete and inconsistent" was both credible and persuasive. The court also noted that Wife's Expert had agreed with and "expressed confidence" in the report drafted by Husband's Expert, which valued

Husband's ownership interest in Rod-Techs at $480,000 as of December 31, 2021. The court concluded that neither party presented any evidence to suggest that this alleged "draft" report was "deficient in any way, or not complete."

{¶ 13} The domestic relations court also observed that Husband's Expert's initial report differed from his more recent report, which valued Husband's ownership interest in Rod-Techs at $210,000 as of December 31, 2022. Regarding that more recent report, the court found that it contained "significant discrepancies" concerning Rod-Techs' year-over-year payroll expenses and the claimed value of Rod-Techs' various business assets. These discrepancies, along with the fact that Rod-Techs had never been audited by an outside accounting firm, led the court to find Husband's Expert's valuation of Husband's ownership interest at $210,000 as of December 31, 2022, lacked sufficient basis. In doing so, the court determined that the "underlying data" used by Husband's Expert to reach his conclusion in that report did not have a "solid" foundation.

{¶ 14} The domestic relations court also noted that credible evidence was presented at the parties' final divorce hearing, raising questions about whether Rod-Techs was being properly managed in a businesslike manner. This was in addition to the court finding that the evidence showed Husband had used "the company coffers to pay for household and personal expenses," including travel, dining, and entertainment. The court further determined that some of Rod-Techs' various business assets had "a negligible business purpose." One such asset, as noted by the domestic relations court, was a fishing boat valued by Husband at approximately $27,000.

{¶ 15} Based on the findings above, the domestic relations court concluded that, without an arm's length sale of the business, the "best evidence" provided by the parties to determine the value of Husband's ownership interest in Rod-Techs as of the end of the marriage indicated it was worth $480,000. This is the same value that both Husband's

and Wife's experts agreed it was worth as of December 31, 2021. After making this decision, the court further determined that, after considering the necessary factors outlined in R.C. 3105.18(C)(1), it was equitable for Wife to receive spousal support from Husband of $1,520 per month for 106 months, starting December 1, 2024. The court also ordered Husband to pay Wife approximately $80,000 to balance the parties' property division.

{¶ 16} On April 2, 2025, the domestic relations court issued a divorce decree dissolving the marriage of Husband and Wife. Husband appealed. To support his appeal, Husband raised four assignments of error for this court's review.

## II.  Husband's Appeal

{¶ 17} In his four assignments of error, Husband contests the domestic relations court's valuation of his ownership interest in Rod-Techs at $480,000. Husband also contests the court's resulting spousal support and property division awards. We will address each of Husband's four assignments of error in turn.

## A.  Valuation of Rod-Techs

{¶ 18} Husband's Assignment of Error No. 1 states:

> THE TRIAL COURT ERRED IN DETERMINING A VALUATION OF ROD-TECHS, INC.

{¶ 19} In his first assignment of error, Husband argues the domestic relations court erred by valuing his ownership interest in Rod-Techs at $480,000. Husband argues that the court should have instead valued his ownership interest at $210,000. In support, Husband presents two arguments for our consideration. Specifically, Husband asserts (1) the evidence the court relied on to value his ownership interest in Rod-Techs at $480,000 was improperly admitted under Evid.R. 702, and (2) the court's valuation of his ownership interest in Rod-Techs at $480,000 was not supported by competent, credible evidence

and was therefore against the manifest weight of the evidence. We will examine both arguments below.

### 1. Husband's First Issue Presented for Review

{¶ 20} In his first issue, Husband argues that the evidence the domestic relations court relied on to determine his ownership interest in Rod-Techs at $480,000 was improperly admitted under Evid.R. 702. We disagree.

{¶ 21} Evid.R. 702 concerns the admissibility of expert testimony. The rule exists "to provide a baseline for determining who may offer testimony about specialized topics not necessarily in the knowledge of the average person." *Robertson v. Park*, 2026-Ohio-388, ¶ 73, fn. 7 (12th Dist.). Under that rule, for expert testimony to be admissible, it must meet three requirements:

> (A) The witness's testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
>
> (B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony; and
>
> (C) The witness's testimony is based on reliable scientific, technical, or other specialized information.

Evid.R. 702. Therefore, based on the rule's plain language, "[t]he expert witness is not required to be the best witness on the subject, but his or her testimony must assist the trier of fact in the search for the truth." *Robertson* at ¶ 62, citing *Alexander v. Mt. Carmel Med. Ctr.*, 56 Ohio St.2d 155, 159 (1978).

{¶ 22} Domestic relations courts, like all trial courts, have broad discretion in deciding whether to admit expert testimony. *Granada v. Rojas*, 2024-Ohio-1272, ¶ 8 (8th Dist.). Consequently, we review a domestic relations court's decision to admit or exclude expert testimony under an abuse-of-discretion standard. *Victor v. Kaplan*, 2020-Ohio-

3116, ¶ 49 (8th Dist.). An "abuse of discretion" means that the court made a decision that was unreasonable, arbitrary, or unconscionable. *Valentine v. Conrad*, 2006-Ohio-3561, ¶ 9. "Without those elements, it is not the role of this court to substitute its judgment for that of the trial court." *Id.*

{¶ 23} Husband initially argues that the domestic relations court erred in admitting and relying on Wife's Expert's testimony to determine the value of his interest in Rod-Techs at $480,000 because Wife's Expert lacked the specialized knowledge required under Evid.R. 702(B) to qualify as an expert in business valuations. "[T]he valuation of a business interest generally requires the opinion testimony of a qualified expert witness." *Moore v. Moore*, 2007-Ohio-4355, ¶ 44 (12th Dist.). To support this argument, Husband contends that Wife's Expert could not qualify as an expert in business valuation because he testified that his "main" profession was in accounting.

{¶ 24} However, while that may be true, as noted above, "[u]nder Ohio law, to 'qualify as an expert witness, a potential witness does not have to be the most knowledgeable or the best witness regarding the topic at hand.'" *Levine v. Kellogg*, 2020-Ohio-1246, ¶ 68 (10th Dist.), quoting *In re B.D.T.K.*, 2009-Ohio-6079, ¶ 25 (9th Dist.), citing *Scott v. Yates*, 1994-Ohio-462, ¶ 9. The relevant inquiry is instead "whether the proposed witness possesses knowledge such that his or her testimony will aid the trier of fact" on matters beyond the knowledge or experience possessed by lay persons. *McCubbin v. Michigan Ladder Co.*, 112 Ohio App.3d 639, 642 (1st Dist.1996).

{¶ 25} The record in this case shows that Wife's Expert graduated from Central State University with a degree in accounting in the early 1980s. After graduating, Wife's Expert was hired as a "revenue agent" with the IRS. At the IRS, Wife's Expert was to "audit small and medium size[d] businesses and do group large audits here in Cincinnati." He stayed with the IRS for roughly 4.5 years. After leaving the IRS, Wife's Expert worked

for two accounting firms: one for four years and the other for one year. He then started his own accounting firm in Clermont County, which he has operated for over 37 years.

{¶ 26} During that time, and still to this day, Wife's Expert testified that his work includes "accounting, financial statements, management consulting, tax returns for business and individuals and planning." Wife's Expert also testified that his work has involved business valuations of local, minority-owned construction companies, although he does not usually advertise that as one of his services. He further testified that he is knowledgeable about minority-owned businesses, including Rod-Techs, and the general commercial construction industry in and around the greater Cincinnati area, where Rod-Techs operates.

{¶ 27} The domestic relations court found Wife's Expert to be an accounting expert, specifically in "construction accounting," thereby rendering him qualified to offer his opinion on the value of Husband's ownership interest in Rod-Techs for property division purposes. The court did not abuse its discretion in making this decision. This is because, considering Wife's Expert's education and extensive experience in the accounting field, the court's conclusion that he possessed the specialized knowledge needed to qualify as an expert under Evid.R. 702(B) was neither arbitrary, unreasonable, nor unconscionable. This holds true even though Wife's Expert testified that his "main" profession was in accounting rather than the more specialized field of business valuation. "Experts assist courts by providing specialized knowledge, but they need not be drawn only from the select, extremely 'well-credentialed' few as though they were flawless oracles." *Robertson*, 2026-Ohio-388, at ¶ 73, fn. 7 (12th Dist.). Therefore, because there was no error in the domestic relations court's decision, Husband's first argument concerning Evid.R. 702 fails.

{¶ 28} Husband also contends that the domestic relations court erred by admitting

and relying on Wife's Expert's testimony to determine the value of his ownership interest in Rod-Techs at $480,000 because this testimony was not based on reliable information as required by Evid.R. 702(C). Husband argues that Wife's Expert's testimony was instead based on unreliable information derived from an "incomplete, draft report" that was not introduced into evidence at the parties' final divorce hearing. However, the domestic relations court found nothing in the record indicating that the alleged "incomplete, draft report" upon which Wife's Expert relied—a report prepared by Husband's Expert valuing Husband's interest in Rod-Techs at $480,000 as of December 31, 2021—was "deficient in any way, or not complete." The same holds true for this court.

{¶ 29} The record shows that Husband's Expert's initial report was abandoned only after Husband requested a new report valuing his ownership interest in Rod-Techs as of December 31, 2022. Under these circumstances, the domestic relations court found the alleged "incomplete, draft report" initially prepared by Husband's Expert—valuing Husband's ownership in Rod-Techs at $480,000 as of December 31, 2021—to be both credible and reliable. The court noted that this was different from Husband's Expert's more recent report, which valued Husband's ownership interest in Rod-Techs at $210,000 as of December 31, 2022.

{¶ 30} Specifically, regarding that more recent report, the domestic relations court found it contained "significant discrepancies" concerning Rod-Techs' year-over-year payroll expenses and the claimed value of its various business assets. These discrepancies, along with the fact that Rod-Techs had never been subject to an audit by an outside independent third-party accounting firm, led the court to conclude that Husband's Expert's valuation of Husband's ownership interest in Rod-Techs at $210,000 as of December 31, 2022, was flawed, because the "underlying data" used by Husband's Expert lacked a "solid" foundation. We find no error in the domestic relations court's

decision. Therefore, finding no error, Wife's Expert's second argument regarding Evid.R. 702 also fails.

{¶ 31} Accordingly, for the reasons outlined above, we find no merit to either of Husband's two arguments raised in support of his first issue presented for review in support of his first assignment of error.

## 2. Manifest Weight of the Evidence

{¶ 32} In his second issue presented for review in support of his first assignment of error, Husband argues that the domestic relations court's valuation of his ownership interest in Rod-Techs at $480,000 was unsupported by competent, credible evidence and was therefore against the manifest weight of the evidence. We disagree.

{¶ 33} "The governing legal principles are straightforward. Before crafting an equitable division of marital property, a court must first determine the value of the assets before it." *Naiman v. Naiman*, 2025-Ohio-1589, ¶ 55 (12th Dist.). This includes Husband's ownership interest in Rod-Techs. Valuing a business like Rod-Techs is a "quintessentially fact-intensive question" where "reasonable minds may differ on methodology." *Id.* at ¶ 54, 64. This is why, when determining Rod-Techs' value in this case, the domestic relations court was "neither required to use a particular valuation method nor precluded from using any method." *Gregory v. Kottman-Greggory*, 2005-Ohio-6558, ¶ 15 (12th Dist.). The only requirement was that the domestic relations court adopted a value supported by competent, credible evidence in the record. *Moore v. Moore*, 2007-Ohio-4355, ¶ 45 (2007). "This standard of review is highly deferential and even 'some' evidence is sufficient to sustain the judgment and prevent a reversal." *Barkley v. Barkley*, 119 Ohio App.3d 155, 159 (4th Dist.1997). Therefore, as long as the record contains some competent, credible evidence to support the domestic relations court's decision, "it will not be disturbed on appeal." *O'Harra v. O'Harra*, 1988 Ohio App. LEXIS 5168, *5 (12th

Dist.1988).

{¶ 34} Just as before, Husband argues that the domestic relations court erred in valuing his ownership interest in Rod-Techs at $480,000 because that valuation was based on a "draft, incomplete report" that was not submitted into evidence at the parties' final divorce hearing. However, as previously noted, the domestic relations court found the report valuing Husband's ownership interest in Rod-Techs at $480,000 as of December 31, 2021, to be the "best evidence" the parties had made available to establish the value of Husband's ownership interest in Rod-Techs as of the termination date of his and Wife's marriage. While this report was not admitted in evidence, the record indicates the report was submitted to the court for its review.

{¶ 35} That report's valuation was prepared by and testified to by Husband's Expert, and Wife's Expert testified that he agreed with that valuation and found it "reasonable" based on his review of Rod-Techs' previous years' tax returns. We find no error in the domestic relations court's decision. This is because, after carefully examining the record, we find that the domestic relations court's decision to value Husband's ownership interest in Rod-Techs at $480,000 was supported by some competent, credible evidence in the record. We also find that the domestic relations court's decision was not against the manifest weight of the evidence.

{¶ 36} In so holding, we note that it is not this court's duty to reweigh the evidence that Husband and Wife provided to the domestic relations court to determine the value of Husband's ownership interest in Rod-Techs at their final divorce hearing. *Naiman*, 2025-Ohio-1589, at ¶ 64 (12th Dist.). It is also not within this court's authority to substitute our judgment for that of the domestic relations court's assessment of Husband's and Wife's expert witnesses' credibility. *Id.* We are instead limited to reviewing the record to determine whether the domestic relations court's decision to value Husband's ownership

interest in Rod-Techs at $480,000 as of the end of their marriage was supported by some competent, credible evidence. We find that it was. Therefore, because we conclude that the domestic relations court's decision was supported by some competent, credible evidence and was not against the manifest weight of the evidence, Husband's second issue raised in support of his first assignment of error is also without merit.

{¶ 37} Accordingly, having found no merit to either of the issues that Husband raised in support of his first assigned error, Husband's first assignment of error lacks merit and is overruled.

### B. Calculation of Spousal Support

{¶ 38} Husband's Assignment of Error No. 2 states:

THE TRIAL COURT ERRED IN ITS CALCULATION OF SPOUSAL SUPPORT.

{¶ 39} In his second assignment of error, Husband argues that the domestic relations court erred in calculating the monthly spousal support he owed to Wife. We disagree.

{¶ 40} In divorce proceedings, after the domestic relations court determines the division or disbursement of property, it "may award 'reasonable spousal support' to either party." *Carson v. Manubay*, 2023-Ohio-2015, ¶ 36 (12th Dist.), quoting R.C. 3105.18(B). When deciding whether spousal support is appropriate and reasonable, the domestic relations court has "a statutory duty to base its spousal support order on a careful and full balancing of the factors in R.C. 3105.18(C)(1)." *Lykins v. Lykins*, 2018-Ohio-2144, ¶ 40 (12th Dist.). These factors include, but are not limited to, "the income of the parties, the relative earning abilities of the parties, the retirement benefits of the parties, the ages and physical, mental, and emotional conditions of the parties, the duration of marriage, and the standard of living the parties established during the marriage." *Mann v. Muktarian*,

2025-Ohio-4404, ¶ 8 (12th Dist.), citing R.C. 3105.18(C)(1)(a)-(e) and (g). These factors also include "[t]he tax consequences, for each party, of an award of spousal support." R.C. 3105.18(C)(1)(l).

{¶ 41} A domestic relations court has "broad discretion in determining whether to award spousal support, as well as the amount and duration of such award, based on the facts and circumstances of each case." *Spillane v. Spillane*, 2020-Ohio-5052, ¶ 12 (12th Dist.). Given this broad discretion, a domestic relations court's decisions with respect to spousal support may not be disturbed absent an abuse of that discretion. *Wessels v. Egan*, 2025-Ohio-1493, ¶ 14 (12th Dist.). The appellant's mere disagreement with the court's decision is insufficient to demonstrate an abuse of discretion. *Konrad v. Konrad*, 2025-Ohio-5691, ¶ 28 (12th Dist.). The appellant must instead show that the domestic relations court acted unreasonably, arbitrarily, or unconscionably in making its decision. *Porter v. Porter*, 2024-Ohio-1413, ¶ 20 (12th Dist.). "An abuse of discretion is therefore found only in the rare instance when the decision is unsupported by the facts and is contrary to logic." *Hubbard v. Hubbard*, 2019-Ohio-3065, ¶ 6 (10th Dist.).

{¶ 42} Here, Husband argues that the domestic relations court erred in calculating the monthly spousal support obligation he owed to Wife because it failed to "incorporate" the tax consequences of such an award into its decision. However, as part of its decision, the domestic relations court explicitly stated that it had considered the tax consequences of a spousal support award on each party, as required by R.C. 3105.18(C)(1)(l). The court noted that it had done so despite neither party presenting any evidence on this factor at their final divorce hearing. The court did this by specifically noting within its decision that "Husband is not to deduct support from his tax liability, nor is Wife required to include support in her taxable income." This is significant because the plain language of the statute does not require the domestic relations court "to fashion a spousal support award

in the most tax advantageous manner or in a manner to obtain a net tax savings." *Spillane v. Spillane*, 2020-Ohio-5052, ¶ 28 (12th Dist.). The statute merely requires the court to consider, along with the other R.C. 3105.18(C)(1) factors, the tax consequences of an award of spousal support for each party. *Id.* That is exactly what the domestic relations court did in this case. Therefore, finding no merit to Husband's argument raised herein, Husband's second assignment of error is without merit and is overruled.

### C. Retroactive Spousal Support

{¶ 43} Husband's Assignment of Error No. 3 states:

> THE TRIAL COURT ERRED BY NOT MAKING THE SPOUSAL SUPPORT AWARD RETROACTIVE.

{¶ 44} In his third assignment of error, Husband argues that the domestic relations court erred by setting the effective date of his monthly spousal support obligation as of December 1, 2024. He argues that the court should have instead designated April 19, 2022, the date Wife filed a motion to modify the court's temporary spousal support award, as the effective date. To support his argument, Husband cites *Lewis v. Lewis*, 2008-Ohio-3342 (7th Dist.), a decision in which the Seventh District Court of Appeals held that a domestic relations court "cannot retroactively modify a temporary spousal support award in a final divorce decree in the absence of a motion to modify the temporary spousal support award." *Id.* at ¶ 72. Husband also cites *Ostmann v. Ostmann*, 2006-Ohio-3617 (9th Dist.), a decision in which the Ninth District Court of Appeals held:

> [A] modification retroactive to a previous temporary order violates due process. Where, as here, parties to a divorce operate under a temporary order of support during divorce proceedings without motions to modify being filed and ruled upon, a trial court cannot in effect retroactively modify that order via the final divorce decree. Any modification, downward or upward, may only equitably be applied prospectively from the date of the decree.

*Id.* at ¶ 45.

{¶ 45} Based on the holdings in *Lewis* and *Ostmann*, Husband argues that because Wife previously asked the domestic relations court to modify its temporary spousal support award issued in this case, the court was required to set the effective date of his monthly spousal support obligation, as specified in its final divorce decree, to the same date that Wife filed her motion to modify, April 19, 2022. However, even assuming that this court were bound by the *Lewis* or *Ostmann* holdings, which we are not, there is nothing in either decision that would require the court to do so. That is, neither *Lewis* nor *Ostmann* contains language that mandates a domestic relations court, when a spousal support obligee moves to modify a temporary spousal support award issued in a divorce proceeding, to set the effective date of the spousal support obligor's monthly spousal support obligation to the same date that the obligee filed his or her motion to modify.

{¶ 46} The *Lewis* and *Ostmann* decisions simply clarify when a domestic relations court can retroactively modify a temporary spousal support award included in its final divorce decree, without violating either party's due process rights. As *Lewis* and *Ostmann* explain, in cases where a motion to modify has been filed, the domestic relations court may retroactively modify, as part of its final divorce decree, a temporary spousal support award to the date the motion to modify was filed. *Lewis*, 2008-Ohio-3342, at ¶ 72; *Ostmann*, 2006-Ohio-3617, at ¶ 45. However, without such a motion, the court cannot retroactively modify a temporary spousal support award as part of the final divorce decree without infringing on either party's due process rights. *Lewis* at ¶ 72; *Ostmann* at ¶ 45. "Any modification, downward or upward, may only equitably be applied prospectively from the date of the decree." *Ostmann*. Therefore, because the authority cited by Husband to support his argument that the court erred by not setting the effective date of his monthly support obligation as April 19, 2022, does not actually support that argument, Husband's third assignment of error is without merit and is overruled.

**D. Property Division Award**

{¶ 47} Husband's Assignment of Error No. 4 states:

THE LOWER COURT ERRED IN ITS PROPERTY DIVISION AWARD.

{¶ 48} In support of his fourth assignment of error, Husband argues that the domestic relations court issued an erroneous property division award. Specifically, Husband claims that the court erred in ordering him to pay Wife approximately $80,000 to equalize the property division. However, the arguments Husband presents to support this claim are based solely on this court's decision to sustain his first assignment of error. But we did not sustain Husband's first assignment of error; instead, we overruled it. We reach the same conclusion here and find that the domestic relations court did not err in its property division award by ordering Husband to pay Wife nearly $80,000 to equalize the award. Therefore, Husband's fourth assignment of error is likewise without merit and is overruled.

### III. Conclusion

{¶ 49} For the reasons described above, and having now overruled each of Husband's four assigned errors, the final divorce decree from which Husband appealed is affirmed.

{¶ 50} Judgment affirmed.

HENDRICKSON, P.J., and SIEBERT, J., concur.

- 19 -

---

## J U D G M E N T  E N T R Y

The assignments of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, affirmed.

It is further ordered that a mandate be sent to the Clermont County Court of Common Pleas, Domestic Relations Division, for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed in compliance with App.R. 24.

*/s/ Robert A. Hendrickson, Presiding Judge*

*/s/ Matthew R. Byrne, Judge*

*/s/ Melena S. Siebert, Judge*